FEDERAL TRADE COMMISSION v. MILL ERS' NAT. FEDERATION et al.

Court of Appeals of District of Columbia.
Submitted October 4, 1927. Decided December 5, 1927.

Petition for Rehearing Denied January 21, 1928.

No. 4541.

1. **Trade-marks and trade-names and unfair competition** ☞80½—Equity has jurisdiction to set aside Federal Trade Commission's order directing issuance of subpœnas duces tecum, requiring unincorporated association to produce documents before Commission conducting investigation under resolution of Senate (Federal Trade Commission Act, §§ 9, 10 [15 USCA §§ 49, 50]).

Equity court *held* to have jurisdiction to set aside order directing issuance of subpœnas duces tecum, requiring unincorporated association to produce certain letters and documents at hearing conducted by Federal Trade Commission, investigating production, distribution, transportation, and sale of flour and bread, including by-products, under resolution of United States Senate, since Federal Trade Commission Act, § 10 (15 USCA § 50), imposes criminal liability for refusal of person to attend hearing and testify or produce documentary evidence and under section 9 (15 USCA § 49) attendance of witnesses and production of documentary evidence may be required.

2. **Equity** ☞44—Statutory remedy does not exclude exercise of equitable jurisdiction.

Remedy is not exclusive merely because it is statutory, since remedy at law, to exclude concurrent remedy in equity, must be as complete, practical, and ·efficient to ends of justice and its prompt administration as remedy in equity.

3. **Constitutional law** ☞250, 258—Injunction ☞85(2)—Statute compelling individual to subject himself to criminal prosecution for failure to produce evidence before Federal Trade Commission to inquire into the Commission's power or jurisdiction, amounts to denial of due process and equal protection of laws, so that equity may enjoin enforcement (Federal Trade Commission Act, § 10 [15 USCA § 50]).

Jurisdiction of equity to restrain threatened enforcement of criminal penalties for failure of unincorporated association to produce documentary evidence before Federal Trade Commission under subpœnas duces tecum is based on principle that, where statute, such as Federal Trade Commission Act, § 10 (15 USCA § 50), compels individual to subject himself to criminal prosecution, as condition precedent to inquiring into power or jurisdiction of commission to act, it amounts to denial of due process and equal protection of laws.

4. **Appeal and error** ☞863—On special appeal from temporary injunction, only question of jurisdiction will be determined.

On special appeal from temporary decree of injunction, reviewing court will go no further than to determine question of lower court's jurisdiction; questions passed on in granting temporary injunction, but going to merits of case when issues are properly joined, not being proper for decision.

Appeal from Supreme Court of District of Columbia.

Suit by the Millers' National Federation and others against the Federal Trade Commission. From a temporary decree of injunction to set aside, annul, and suspend an order directing that subpœnas duces tecum be issued, defendant appeals. Affirmed and remanded.

A. F. Buseck and J. T. Clark, both of Washington, D. C., for appellant.

K. D. Loos, of Washington, D. C., and S. A. Foster and E. S. Rogers, both of Chicago, Ill., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate ·Justice. Appellees, plaintiffs below, sought a temporary injunction to set aside, annul, and suspend an order directing that subpœnas duces tecum be issued and served upon the plaintiffs or their officers, requiring the production of certain letters and documents specified in the order. From a temporary decree of injunction the case comes here by special appeal.

The Millers' National Federation is an unincorporated association composed of about 300 individuals, partnerships, and corporations. The association was organized in 1902 to promote the general welfare of the millers of the United States, engaged in the production of wheat flour and by-products. It is averred in the bill, and admitted by the motion to dismiss, that the object of the association is mutual assistance in working out the problems affecting the industry as a whole, including traffic and freight matters; that it is not engaged in business; has no shares of capital or capital stock, has never at any time sought, collected, or disseminated among its members any price information, or attempted to fix or suggest prices, or to interfere with commercial business, either interstate or intrastate.

On February 16, 1924, the United States Senate by resolution directed the Federal Trade Commission "to investigate the production, distribution, transportation, and sale of flour and bread, including by-products, and report its findings in full to the Senate, showing the costs, prices, and profits at each stage of the process of production and distribution, from the time the wheat leaves the farm until the bread is delivered to the consumer; the extent and methods of price fix-

ing, price maintenance, and price discrimination; the developments in the direction of monopoly and concentration of control in the milling and baking industries, and all evidence indicating the existence of agreements, conspiracies, or combinations in restraint of trade."

In pursuance of this resolution, the Federal Trade Commission, through its representative, demanded of plaintiff federation access to its books and records, and that copies be furnished of all papers and documents disclosing the activities of the federation. This request was partially refused, for the reason alleged that the letters and papers demanded were of a private and confidential nature, and were not material or relevant to any lawful investigation by the Commission.

On April 16, 1926, the Commission issued an order for a hearing before an authorized examiner, to be held at Chicago, Ill., on the 28th of April, 1926, and at Minneapolis, Minn., on May 3, 1926, and that the plaintiffs herein, together with a large number of other persons connected with the federation, be subpoenaed to testify and produce at the hearings such documents and papers as may be required by the Commission.

The subpoena served upon the secretary of plaintiff federation, A. P. Husband, required him to appear and testify and to produce the minutes of 21 group meetings held by members of the plaintiff federation; 390 letters from the witness Husband to various milling companies, and from various milling companies to him; 53 letters from members of the plaintiff federation to the witness Husband, in answer to a circular letter from him, requesting the views and opinions of the members of the federation as to whether certain practices should be obeyed or disobeyed. Similar subpoenas were issued and served on various persons and milling companies, some of whom were members of the federation and others who were not members.

It is averred that no complaint has ever been filed before the Federal Trade Commission, charging any of the plaintiffs with the violation of the anti-trust laws, and that the Commission is proceeding wholly upon the resolution of the Senate, and that, if it be not restrained, the private letters, papers, and documents of the plaintiff federation, containing information relating to trade practices, customers, merchandising policies, special markets, and information generally regarding the affairs of the members of plaintiff federation, will be exhibited and revealed to the public, transmitted to the Senate of the United States, and made available to the inspection of every one as a public record, thereby inflicting upon plaintiff federation and its members irreparable damage and injury.

It is not contended that in the present case the Commission is proceeding under section 5 of the Federal Trade Commission Act (15 USCA § 45), since the plaintiffs, as alleged in the bill, have not been served with a complaint stating any charges or containing a notice of hearing as therein provided. It is sought, however, by the Commission, to sustain its authority to proceed under the provisions of section 6d of the act (15 USCA § 46), which, among other things, provides that the Commission may proceed, when directed to do so by "the President, or either House of Congress, to investigate and report the facts relating to any alleged violations of the anti-trust acts by any corporation."

The motion of defendant Commission to dismiss the bill is based upon the alleged lack of jurisdiction of a court of equity to grant the relief prayed; that plaintiffs have failed to state a case which entitles them to any relief in a court of equity; that plaintiffs have a complete and adequate remedy at law under section 9 of the Federal Trade Commission Act (38 Stat. 717 [15 USCA § 49]); that the bill fails to state facts showing that plaintiffs are threatened with irreparable injury or damage; that to grant an injunction in the premises would be an unconstitutional interference with the legislative branch of the government; that plaintiffs are not threatened with or liable to a multiplicity of suits; and that the witnesses subpoenaed have no such interest in and are not so threatened with injury by reason of the investigation as to entitle them to be heard in a court of equity.

[1] The jurisdiction of the court below to enter the decree appealed from is challenged chiefly on the authority of a recent decision of the Supreme Court in a case which is in some respects similar to the one at bar. Federal Trade Commission et al. v. Claire Furnace Co. et al., 274 U. S. 160, 47 S. Ct. 553, 71 L. Ed. 978. In that case the Commission issued an order requiring a number of corporations engaged in the coal, steel, and related industries to file with it monthly reports in the form prescribed, showing output of every kind, cost of production, sale prices, contract prices, capacity, buying orders, depreciation, expenses, income, etc. It was sought to enjoin the Commission from proceeding to enforce its order. The penalty imposed against a corporation for failure

to respond to the demands of the Commission and file such reports as may be required is prescribed in section 10 of the Federal Trade Commission Act (15 USCA § 50), as follows: "If any corporation required by this act to file any annual or special report shall fail so to do within the time fixed by the Commission for filing the same, and such failure shall continue for thirty days after notice of such default, the corporation shall forfeit to the United States the sum of $100 for each and every day of the continuance of such failure, which forfeiture shall be payable into the Treasury of the United States, and shall be recoverable in a civil suit in the name of the United States brought in the district where the corporation has its principal office or in any district in which it shall do business. It shall be the duty of the various district attorneys, under the direction of the Attorney General of the United States, to prosecute for the recovery of forfeitures."

The question of criminal liability was not involved in the Claire Case. The forfeiture could only be recovered against the corporations in a civil proceeding, and the action could only be brought for such recovery under the following provision of section 9 of the act: "Upon the application of the Attorney General of the United States, at the request of the Commission, the District Courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of this act or any order of the Commission made in pursuance thereof."

It was held that this placed a discretionary power in the Attorney General, as to whether or not he should grant the application of the Commission and apply for mandamus to compel compliance with the order of the Commission, or bring a civil suit for the collection of the forfeited penalties, and that in either event the corporation so proceeded against would have an opportunity to present all the defenses available in a proceeding in equity. Accordingly it was held that the defense thus open furnished a complete and adequate remedy at law, and the court directed the dismissal of the case.

It is insisted that the Claire decision is controlling in the present case, but we are not impressed with this contention. The proceeding here instituted by the Commission is not against a corporation, but against an unincorporated association of individuals, partnerships, and corporations. Monthly reports are not sought from the corporations involved, but testimony from individual witnesses. The subpoenas issued in this case require the response of individual witnesses, who would be personally liable for neglect or refusal to appear and testify. The penalty imposed by section 10 of the act for such neglect or refusal is as follows: "That any person who shall neglect or refuse to attend and testify, or to answer any lawful inquiry, or to produce documentary evidence, if in his power to do so, in obedience to the subpoena or lawful requirement of the Commission, shall be guilty of an offense and upon conviction thereof by a court of competent jurisdiction shall be punished by a fine of not less than $1,000 nor more than $5,000, or by imprisonment for not more than one year, or by both such fine and imprisonment."

It will be observed that the penalty affixed against an individual for refusal to testify or furnish documentary evidence is very different and much more severe than that imposed against a corporation for failure to make the reports required by the Commission. After the penalty has attached, ample procedure is provided in the act to compel a witness to testify. The discretionary power of the Attorney General to proceed by mandamus extends to both persons and corporations; and section 9 of the act also provides that "such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing, and in the case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses, and the production of documentary evidence." But the penalty for disobedience of the order of the court in these instances is for contempt, and not the penalty for disobedience of subpoena provided in section 10. It will be observed that the power to punish a person offending, under section 10 of the act, is not dependent on the action or discretion of the Attorney General or the Commission, but may be had upon the complaint of any person interested in seeing the orders of the Commission enforced.

If the only procedure open against a contumacious witness was by mandamus at the instance of the Attorney General, as in the case of a corporation, and, in the event of the issuance of a writ, the witness, by complying with the order, could purge himself from liability, the rule in the Claire Case would apply; but here the mere refusal to obey the subpoena is made a separate and substantive criminal offense, with the additional possibility of a proceeding against him at the instance of the Commission. In other words, the discretion reposed in the Attorney

General in no respect furnishes immunity from prosecution in any court having proper jurisdiction of the case.

Unquestionably, as in the Claire Case, where specific performance of the order could be compelled only by mandamus, and a full opportunity is afforded to answer, and set up by way of defense, objections to the validity of the orders, the legal remedy would be adequate. In the present case, however, a different situation is presented, since upon refusal to comply with the subpœna the witness lays himself liable to the criminal penalties imposed by section 10. The criminal liability attaches, even if the procedure by mandamus were attempted by the Attorney General, or action be instituted by the Commission to compel obedience to its subpœna; and whether the witness be proceeded against for disobedience of the subpœna under section 10, or in mandamus at the instance of the Attorney General, or by the Commission under section 9, criminal liability for disobedience is a condition precedent to the right to test the validity of the act.

[2] The jurisdiction of a court of equity to grant injunction in such-cases, even before indictment, is upheld in Tedrow, United States District Attorney, v. Lewis & Son, 255 U. S. 98, 41 S. Ct. 303, 65 L. Ed. 524. The threatened criminal proceedings in that case were under the Lever Law, and the proceeding in equity to restrain the threatened prosecutions on the ground of the unconstitutionality of the statute. It would seem that this question would have afforded a complete defense in the criminal trials, but the court held that the remedy thus afforded, as a defense to the threatened criminal proceedings, was inadequate, and that injunction would lie to prevent the threatened prosecutions. It follows that a remedy is not exclusive merely because it is statutory. It is well settled "that the remedy at law, in order to exclude a concurrent remedy at equity, must be as complete, as practical, and as efficient to the ends of justice and its prompt administration, as the remedy in equity." Walla Walla v. Water Co., 172 U. S. 1, 12, 19 S. Ct. 77, 82 (43 L. Ed. 341).

[3] The jurisdiction of equity to restrain the threatened enforcement of the criminal penalties in this case is based upon the well-recognized principle that, where the terms of the statute are so expressed that the only avenue open to test its validity is through disobedience of a criminal statute, it amounts to a denial of a hearing, a want of due process of law. In other words, if the statute, as in this case, compels an individual to

subject himself to criminal prosecution, as a condition precedent to inquiring into the power or jurisdiction of the Commission to act, it amounts to a deprivation of the equal protection of the laws. In Cotting v. Kansas City Stock Yards Co., 183 U. S. 79, 102, 22 S. Ct. 30, 40 (46 L. Ed. 92), Mr. Justice Brewer, speaking for the court, said: "But when the Legislature, in an effort to prevent any inquiry of the validity of a particular statute, so burdens any challenge thereof in the courts that the party affected is necessarily constrained to submit rather than take the chances of the penalties imposed, then it becomes a serious question whether the party is not deprived of the equal protection of the laws."

The penalty provided in section 10 of the act, applicable to this case, provides for the punishment of a person refusing to testify or produce documentary evidence. It also applies to corporations as well as individuals. True, there is the provision of the same section, construed in the Claire Case, which applies solely to corporations and provides for a forfeiture of $100 per day for disobedience of an order of the Commission to produce records or make reports when called for. Such an order, however, runs against the corporation for the production of records and reports, and has no reference to the provision relating to witnesses. A corporation can only testify through its officers or agents. These are persons within the statute, and the refusal of an agent or officer to testify or produce records, in response to a subpœna duces tecum affecting the corporation, brings such agent or officer within the criminal provisions of section 10, providing for the punishment of witnesses refusing to testify. In that case, there must first be a violation of the criminal statute by some officer or agent of the corporation to furnish a basis for the corporation to contest the validity of the proceeding in which the testimony is sought.

A corporation is not required to subject its agents or officers to such a hazard as a condition precedent to its right to be heard in a court of justice. Besides, it might be difficult to find an agent who would be willing to refuse to testify and take the chance of imprisonment in the event that the statute authorizing the proceeding should be declared valid. In that instance, if the chance should be mistakenly taken, the plea in the criminal proceeding, that the witness was only a representative of the corporation, would not avail against the enforcement of the penalty.

In Ex parte Young, 209 U. S. 123, 28 S.

Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, it was held that the enormous fines and penalties provided for the enforcement of the act there involved were unconstitutional, because the threat of enforcement would result in the denial of any hearing, a want of due process of law. Accordingly the jurisdiction in equity to pass upon the validity of the statute was upheld. On this point the court said: "It is further objected that there is a plain and adequate remedy at law open to the complainants, and that a court of equity, therefore, has no jurisdiction in such case. It has been suggested that the proper way to test the constitutionality of the act is to disobey it, at least once, after which the company might obey the act, pending subsequent proceedings to test its validity. But in the event of a single violation the prosecutor might not avail himself of the opportunity to make the test, as obedience to the law was thereafter continued, and he might think it unnecessary to start an inquiry. If, however, he should do so while the company was thereafter obeying the law, several years might elapse before there was a final determination of the question, and if it should be determined that the law was invalid the property of the company would have been taken during that time without due process of law, and there would be no possibility of its recovery.

Another obstacle to making the test on the part of the company might be to find an agent or employee who would disobey the law, with a possible fine and imprisonment staring him in the face if the act should be held valid. Take the passenger rate act, for instance: A sale of a single ticket above the price mentioned in that act might subject the ticket agent to a charge of felony, and upon conviction to a fine of five thousand dollars and imprisonment for five years. It is true the company might pay the fine, but the imprisonment the agent would have to suffer personally. It would not be wonderful if, under such circumstances, there would not be a crowd of agents offering to disobey the law. The wonder would be that a single agent should be found ready to take the risk.

In Terrace v. Thompson, 263 U. S. 197, 44 S. Ct. 15, 68 L. Ed. 255, jurisdiction in equity to determine the validity of the Anti-Alien Law of the state of Washington (Laws 1921, p. 156), where the fines and imprisonment threatened were less than those imposed by section 10, the court said: "They are not obliged to take the risk of prosecution, fines, and imprisonment, and loss of property, in order to secure an adjudication of their rights." It thus appears that it is not necessary, as suggested by counsel for the Commission, that the possible fines and penalties be so enormous as "to stagger the imagination" before a court of equity will intervene. The gravity of the penalty is not controlling, since the mere risk of imprisonment is sufficient to deter the average person into submission to the restrictions of a statute, thus depriving the person, company, or corporation affected of any remedy to test its validity. This rule as to equity jurisdiction is upheld in a number of recent cases by the Supreme Court. Truax v. Raich, 239 U. S. 33, 37–39, 36 S. Ct. 7, 60 L. Ed. 131; Oklahoma Operating Co. v. Love, 252 U. S. 331, 336–338, 40 S. Ct. 338, 64 L. Ed. 596; Stafford v. Wallace, 258 U. S. 495, 512, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229.

[4] Inasmuch as this is a special appeal, it is unnecessary for us to go further than to determine the question of the jurisdiction of the court below. The consideration of other questions passed upon in the opinion of the learned trial justice in granting the temporary injunction go to the merits of the case when issues are properly joined, but are not proper for decision at this time. We are therefore of the opinion that the Claire Case is not controlling here, that the present case must be determined upon principles not obtaining in that case, and that injunction will lie to restrain the Commission, should the court find on a final determination of the case on its merits that the Commission has exceeded its jurisdiction.

The decree is affirmed, with costs, and the cause is remanded for further proceedings, not inconsistent with this opinion.