**FEDERAL TRADE COMMISSION,**
**Petitioner,**

v.

**CONTINENTAL CAN COMPANY, Inc.,**
**Respondent.**

**No. M–18–304.**

United States District Court
S. D. New York.

May 15, 1967.

James McI. Henderson, J. B. Truly, Charles C. Moore, Jr., Louis Rosenman, Gerald Harwood, F. T. C., Washington, D. C., Alfred G. Seidman, F. T. C., New York City, for petitioner.

Willkie, Farr, Gallagher, Walton & Fitzgibbon, New York City, for respondent, Helmer R. Johnson, Louis A. Craco, New York City, of counsel.

WYATT, District Judge.

This is an application by the Federal Trade Commission for an order requiring the production of documentary evidence by respondent (Continental). The application is said to be made under Section 9 of the Federal Trade Commission Act (15 U.S.C. § 49; the "Act").

The Commission has issued a complaint against The Crown Cork & Seal Company, Inc. (Crown) alleging a violation of Section 7 of the Clayton Act (15 U.S.C. §§ 18, 21) in respect of metal crown closures for glass and metal containers.

One of the issues between the Commission and Crown is the appropriate line of commerce.

Crown believes that on this issue it needs sales data from Continental and other manufacturers of cans, bottles and closures. At the request of Crown, the Commission issued a subpoena duces tecum to Continental and to a number of other manufacturers.

As to much of the data called for, there is no problem.

Continental resists the subpoena as to certain data, however, unless protection be given to the confidential character of the data.

The dispute between the Commission and Continental is whether the protection which the Commission is willing to give, is reasonable and adequate. The data involved relates to

a. cans sold, 1963–1965;

b. tear-type cans sold, 1963–1965; and

c. Crown-type bottle closures sold, first six months 1966.

It is recognized on all sides that this data is in fact of a highly confidential character and that Continental is justifiably concerned that it not be known to Crown or to any other competitor.

Counsel for all parties reached an understanding that this data when produced by Continental would be examined only by Crown counsel and by Commission personnel actively involved and by prospective witnesses (not Crown employees) who would compile the data, that all those who examine the data

would afford it confidential treatment, and that the Hearing Examiner would be asked to order that if and when the data is offered in evidence it should be placed in camera. The Hearing Examiner declined to approve this understanding, feeling that he should not, in advance of any offer in evidence, order in camera treatment but should pass upon that question if and when the offer in evidence should be made, the material being kept confidential meanwhile.

A majority of the Commission sustained the position of the Hearing Examiner. Two members believed that the data should be protected from disclosure by an order at that time treating the data as in Mississippi River Fuel Corporation, Docket 8657 (June 7, 1966). The procedure in *Mississippi River* was to submit the confidential data to a disinterested accounting firm for compilation in such manner that no confidential data of any individual company would be revealed.

The order of the Commission was made on April 10, 1967 and this application followed.

I

Continental raises a preliminary point that there is no authority under Section 9 of the Act for the Commission to make this application, but that only the Attorney General may make the application. Reliance is on Federal Trade Commission v. Guignon, 261 F.Supp. 215 (E.D.Mo. 1966).

Section 9 of the Act is in relevant part as follows (emphasis supplied):

"Sec. 9. That for the purposes of this Act the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commis-sion may sign subpoenas, and members and examiners of the commission may administer oaths and affirmations, examine witnesses, and receive evidence.

"Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And *in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.*

"Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

"Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of this Act or any order of the commission made in pursuance thereof."

On its face, this section seems entirely clear.

The Commission has authority to make many kinds of orders, for example, an order under Section 6 of the Act (15 U.S.C. § 46) requiring the filing of "reports or answers in writing to specific questions". Enforcement of such an *order,* or any other *order,* is on application of the Attorney General. St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961); Federal Trade Commission v.

Claire Furnace Co., 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978 (1927).

 But the Commission also has specific authority to issue subpoenas requiring the production of "documentary evidence" (15 U.S.C. § 49). To enforce such a *subpoena,* Section 9 of the Act provides that "the *commission* may invoke the aid of any court of the United States * * *" (15 U.S.C. § 49; emphasis supplied). Thus, in enforcing a "subpoena", as distinguished from an "order", no application by the Attorney General is required. Many proceedings by the Commission to enforce its subpoenas have been entertained by the Courts, without any application by the Attorney General and without any question or discussion. Examples in this Circuit are Federal Trade Commission v. Tuttle, 244 F.2d 605 (1957) and Federal Trade Commission v. Green, 252 F.Supp. 153 (S.D.N.Y.1966).

No decision except *Guignon,* above, has ever suggested that enforcement of a Commission subpoena required an application by the Attorney General. It may be that the Court in *Guignon* believed that the Commission had first issued an order and then a subpoena and that in effect enforcement of an order was sought. If this is not the explanation of *Guignon,* then with all deference to that learned Court, the decision is believed entirely in error.

## II

There seems no doubt that the data here in question is confidential to Continental as against Crown or any other competitor. There also seems no doubt that if ever offered in evidence the Commission would protect the data against disclosure to competitors.

While the Commission is doubtless correct in the sense that no immediate disclosure is being threatened, it seems better to avoid further expenditure of time and money on the problem by dealing with it now.

 The application of the Commission is accordingly granted and Continental is directed to comply with the sub-

poena, except that it shall be a sufficient compliance with paragraphs A(1) as to years 1963–65, A(5) as to years 1963–65, and A(6) as to the first six months of 1966 if the data is made available in such way that it will not be revealed to any competitor of Continental.

Counsel should be able to agree on the procedure appropriate to this disposition. If desired, the *Mississippi River* procedure may be used. I am unable to see why this would be impractical or unworkable. Crown is said to have data from 35 of the 38 manufacturers on whom subpoenas were served. This data could be submitted by Crown to an independent accounting firm and Continental (and any other manufacturer whose data has not yet been given up) could submit its data directly to such firm. A compilation could then be made.

If counsel are unable to agree, separate orders may be submitted.

Settle Order.