**FEDERAL TRADE COMMISSION**

v.

**Ralph L. BROWNING, Executive Vice President of Lehigh Portland Cement Company, Appellant.**

**No. 23381.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 20, 1970.

Decided Oct. 9, 1970.

---

Mr. Ronald J. Wilson, Washington, D. C., for appellant.

Mr. Donald L. Horowitz, Atty., Department of Justice, for appellee. Messrs. Thomas A. Flannery, U. S. Atty., Morton Hollander and Leonard Schaitman, Attys., Department of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

Appellant Browning is the Executive Vice-President of Lehigh Portland Cement Company, with his residence and principal place of business in Allentown, Pennsylvania. On this appeal he seeks reversal of a District Court order enforcing a Federal Trade Commission subpoena which had required him to produce certain books and records of Lehigh.[1] The subpoena was issued pursu-

---

1. After being denied a stay pending appeal by the District Court, appellant complied fully with the subpoena. The government therefore suggests that the case is now

ant to the Commission's discovery. rules [2] in a proceeding charging Lehigh with violations of Section 5 of the Federal Trade Commission Act [3] and Section 7 of the Clayton Act [4] by its acquisitions of five ready-mixed concrete firms in Florida, Virginia and Kentucky.

Appellant first contends that the District Court lacked personal jurisdiction to enforce the subpoena. In the enforcement suit appellant was not served with process within the District of Columbia, but rather was served by mail at his office in Allentown, Pennsylvania.

## I.

Rule 4(f) of the Federal Rules of Civil Procedure normally limits the geographical area where a district court's process can be served to the territorial limits of the state in which the district court sits, except that extraterritorial service of process is proper "when authorized by a statute of the United States." [5] We are in complete agreement with the reasons set forth by the District Court in the instant case for its holding that Section 9 of the Federal Trade Commission Act is such a statute,[6] and think the reasons well stated:

The language of Section 9 is significantly different from the ostensibly similar language of Section 310 of the Transportation Act of 1920, which authorized the Railroad Labor Board to enforce its subpoenas in "any District Court of the United States." The Supreme Court held that "by the phrase 'any District Court of the United States' Congress meant any such court 'of competent jurisdiction,'" and the Court therefore concluded that Section 310 was merely a venue statute. Robertson v. Railroad Labor Board, 268 U. S. 619, 627 [45 S.Ct. 621, 69 L.Ed. 1119] (1925). Section 9 of the Federal

---

moot. See Baldridge v. United States, 406 F.2d 526 (5th Cir. 1969). We decline to dispose of this case on the ground of mootness, however, because, among other things, the records are still in the government's possession and thus if they were wrongfully subpoenaed, Browning would be entitled to their return.

2. 16 C.F.R. §§ 3.31–3.37.

3. 15 U.S.C. § 45.

4. 15 U.S.C. § 18.

5. Fed.R.Civ.P. 4(f).

6. Section 9 of the Federal Trade Commission Act (15 U.S.C. § 49) provides in pertinent part:

§ 49. Documentary evidence; depositions; witnesses

For the purposes of sections 41–46 and 47–58 of this title the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpoenas, and members and examiners of the commission may ad-

minister oaths and affirmations, examine witnesses, and receive evidence.

Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of sections 41–46 and 47–58 of this title or any order of the commission made in pursuance thereof.

Trade Commission Act, on the other hand, gives to "any of the district courts of the United States *within the jurisdiction of which such inquiry is carried on*" the authority to enforce subpoenas of Federal Trade Commission inquiries. 15 U.S.C. § 49 (1964). (Emphasis added.) This language must be interpreted as a special grant of jurisdiction, not merely venue to that court or those courts sitting in the district or districts in which the inquiry is being conducted. "[T]he provision restricting the place of suit operates *pro tanto* to displace" the general rule that a suit can only be brought where a defendant is domiciled or happens to be present, "and amply authorizes the Circuit [or District] Court in the district wherein the action is required to be brought to obtain jurisdiction of the persons of the defendants through service upon them of its process in whatever district they may be found." United States v. Congress Construction Co., 222 U.S. 199, 203–204 [32 S.Ct. 44, 56 L.Ed. 163] (1911). * * * To interpret Section 9 as simply a venue statute would be to restrict the place of suit to a particular district and yet to deprive the court in that district of the power to obtain personal jurisdiction of a respondent, absent the fortuitous circumstance of that respondent voluntarily entering the district where the inquiry is being conducted.

 Such a construction would be contrary to the congressional purpose to endow the Commission with broad powers of investigation and the authority to compel "attendance and testimony of witnesses and the production of * * * documentary evidence relating to any matter under investigation * * * from any place in the United States at any designated place of hearing." [7]

7. Federal Trade Commission Act § 9, 15 U.S.C. § 49.

"When in 1914 Congress enacted the Federal Trade Commission Act, it had the advantage of knowing the Supreme Court's [then] narrow construction of the [investigative power granted in] the Interstate Commerce Act and accordingly resorted to exceedingly broad language." 1 K. Davis, Administrative Law Treatise § 3.03, at 169 (1958).

The Supreme Court has since recognized the breadth of power to obtain information that is vested in the Commission by the FTC Act. United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *see also* Automatic Canteen Co. v. FTC, 346 U.S. 61, 79, 73 S.Ct. 1017, 97 L.Ed. 1454 (1953); FTC v. Tuttle, 244 F.2d 605, 610, 614 (2d Cir.), cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957); Moore Business Forms, Inc. v. FTC, 113 U.S.App.D.C. 231, 232, 307 F.2d 188, 189 (1962) (concurring opinion); *cf.* Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) (upholding subpoenas issued under the Fair Labor Standards Act, which incorporates by reference Section 9 of the FTC Act).

Appellant complains that "during the fifty-five year history of the Federal Trade Commission, the Commission has successfully utilized § 9 of the FTC Act *to achieve satisfactory subpoena enforce-* ment without once seeking nationwide service of process." However, this may at least be partially explained by the fact that up until 1961 the Commission's practice had been to hold hearings in various locations in the course of any one proceeding. And, of course, any location in which a hearing was held would be a place where the inquiry was carried on, for subpoena enforcement purposes. In 1961 the Commission amended its rules of practice to provide that all hearings be conducted at one place. FTC Rules of Practice, 16 C.F.R. § 3.41(b). Evidently, that "one place," for reasons of administrative economy or otherwise, is often Washington, D. C.

In any event, as the Supreme Court noted in *Morton Salt, supra,* in a related context:

Respondents * * * say that the present use of the asserted power is novel and unprecedented in Commission practice and introduces a new method of investigating compliance. * * *

The fact that powers long have been unexercised well may call for close scrutiny as to whether they exist; but if granted, they are not lost by being allowed to lie dormant. * * *

338 U.S. at 647, 70 S.Ct. at 366.

Moreover, Commission subpoenas have previously been enforced in the District of Columbia against residents of other states without challenge being made to the per-

Here, the designated place of hearing is Washington, D. C., which is thus necessarily a place where the "inquiry is carried on." [8] In our view, by granting the power to enforce subpoenas only to those district courts "within the jurisdiction of which such inquiry is carried on," Section 9 so limits the place of suit for enforcement of Federal Trade Commission subpoenas as to require an implied grant of authority for extra-territorial service of process in order to effectuate the purpose of the regulatory scheme.[9]

As a practical matter, we must consider that in any major Commission proceeding subpoenas *duces tecum* are issued to many witnesses in various parts of the country. In this case, as a good example, the Government is attempting to enforce thirteen subpoenas against third party witnesses located in seven different judicial districts. The legal questions involved are identical in most of these, and this normally would be expected to be true. It makes for uniformity in the application of the law and economy of judicial administration to center the enforcement proceedings in a single court.

While not conclusive, the legislative history of the Act further tends to buttress this view. The year prior to the statute's enactment, during consideration of proposed legislation to establish the Commission, it was suggested to Congress that judicial enforcement of Commission subpoenas be in "any district court of the United States *in the jurisdiction of which such person may be found* or shall have been directed by such subpoena to appear." [10] Congress, however, did not adopt this proposal, but instead, when the Act was passed the following year, vested jurisdiction in the district court in which the Commission's "inquiry is carried on."

Subsequently, in 1936 the Chairman of the Federal Trade Commission requested an amendment to Section 9 in order that jurisdiction to enforce Commission subpoenas be vested in "any of the District Courts of the United States within the jurisdiction of which such inquiry is carried on or in which the corporation or person guilty of contumacy or refusal to obey resides or carries on business or is found." [11] The Chairman explained that:

Under the present act, the jurisdiction is confined to the district court of the district in which the Commis-

---

sonal jurisdiction of the court. *See e. g.* FTC v. Millers' Nat'l Federation, 57 App. D.C. 360, 23 F.2d 968 (1927), on appeal after remand, 60 App.D.C. 66, 47 F.2d 428 (1931). *See also,* FCC v. Stahlman, 40 F.Supp. 338 (D.D.C.1941), aff'd, 75 U.S.App.D.C. 176, 126 F.2d 124 (1942) where the Federal Communications Commission operating under a virtually identical subpoena power (18 U.S.C. § 409 (g)) successfully enforced a subpoena in the District of Columbia against a resident of Tennessee. Although we recognize that objections to personal jurisdiction may be waived, a reading of the above-cited cases, where subpoena enforcement was vigorously resisted on other grounds, suggests to us that if the parties there had believed that service of process was faulty, they would undoubtedly have pressed that objection.

8. *See* FTC v. Millers' Nat'l Federation, 60 App.D.C. 66, 67, 47 F.2d 428, 429 (1931). The subpoena here in question was issued by the hearing examiner in Washington, D.C., and was returnable there.

9. Appellant argues that because the fourth paragraph of § 9 gives jurisdiction to the district courts, on application of the Attorney General, to issue writs of mandamus to obtain compliance with certain provisions of the Act or "any order of the Commission made in pursuance thereof," the Commission has no need for extra-territorial service of process to enforce subpoenas, since it can obtain the same result in the district court where the respondent resides via these mandamus proceedings. We are, however, in accord with the holding of the court in FTC v. Continental Can Co., 267 F.Supp. 713 (S.D. N.Y.1967), that paragraph four is not applicable to enforcement of subpoenas.

10. Report of the Senate Committee on Interstate Commerce, pursuant to S.Res. 98, on Control of Corporations, Persons, and Firms Engaged in Interstate Commerce, Vol. II, at 2761–2762, 62d Cong. (1913) (emphasis added).

11. S. 3744, 74th Cong., 2d Sess., S.Rept. No. 1705, 74th Cong., 2d Sess., at 9–10 (1936).

sion's inquiry is being carried on. This amendment is to the convenience both of the Commission and members of the public who may be subpoenaed. The Commission hearing to which the witness has been subpoenaed may be in a district remote from his residence. Under the amendment the Commission may bring the proceeding to force his attendance, in the district court of the district of his residence.[12]

Congress, however, declined to accede to this request. Although the proposed amendment was again incorporated in a Senate Bill the following year, the proposed change to Section 9, together with certain other changes, were deleted prior to passage, the responsible committee noting that "there was no pressing need for them at this time." [13]

We therefore hold that the District Court had personal jurisdiction over appellant and properly denied appellant's motion to dismiss the enforcement petition.

## II.

Appellant further complains, first, that he was improperly denied discovery in the enforcement proceeding, and, second, that the trial court erred in enforcing the subpoena because, aside from the issue of personal jurisdiction, the subpoena was issued in violation of the Commission's own rules and should therefore have been held unenforceable. As we shall develop later, appellant's claim for discovery necessarily depends upon the validity of his grounds for resisting enforcement of the subpoena. We therefore deal first with the question of whether the subpoena was enforceable.

12. *Id.*

13. H.Rep. No. 1613, 75th Cong., 1st Sess. 1 (1937). Appellant contends that because the legislative history shows an intent to pattern the FTC's subpoena power after that of the Interstate Commerce Commission, Congress did not mean to grant extra-territorial service of process to courts enforcing FTC subpoenas. In support of this view, he cites Robertson v. Labor Board, 268 U.S. 619, 626, 45 S.Ct. 621, 69 L.Ed. 1119 (1925), where the Supreme Court, in refusing to permit extra-territorial service in a subpoena enforcement proceeding under the Transportation Act of 1920, stated that

> no reason is suggested why Congress should have wished to compel every person summoned either to obey the Board's administrative order without question, or to litigate his right to refuse to do so in such district, however remote from his home or temporary residence, as the Board might select. The Interstate Commerce Commission which, throughout 38 years, has dealt in many different ways with most of the railroads of the United States has never exercised, or asserted, or sought to secure for itself, such broad powers.

As the District Judge noted, the Transportation Act granted subpoena enforcement jurisdiction to "any district court," and the Supreme Court, in the absence of countervailing considerations, interpreted this to mean any district court "of competent jurisdiction." The Federal Trade Commission Act, on the other hand, restricted enforcement suits to those district courts "within the jurisdiction of which such inquiry is carried on." So too, however, does the Interstate Commerce Act. And the Supreme Court in *Robertson* indicated in 1925 that it thought the ICC was equally without authority to enforce subpoenas in districts other than those where the respondent resides.

In the first place, however, the Court's statement in *Robertson* with respect to the ICC's powers is clearly dictum. Secondly, as Professor Davis has so convincingly demonstrated, the Court's view of the investigatory powers of federal agencies has broadened dramatically since 1925. *See* 1 K. Davis, Administrative Law Treatise §§ 3.01–3.04 (1958). Additionally, we note that 28 U.S.C. § 2321 specifically grants nationwide service of process to the district courts, *inter alia*, in suits to enforce "any order of the Interstate Commerce Commission other than for the payment of money or the collection of fines, penalties and forfeitures." An implied grant of authority to enforce subpoenas via nationwide service would thus appear to be unnecessary to achieve the purpose of the Interstate Commerce Act regulatory scheme.

We therefore do not feel that the dictum in the *Robertson* case prevents the construction placed upon Section 9 of the FTC Act by the District Court here.

Initially, we note that, as stated by the court in Adams v. Federal Trade Commission:[14]

There is general unanimity among the courts that a subpoena meets the requirement of enforcement if the inquiry is (1) within the authority of the agency; (2) the demand is not too indefinite, and (3) the information sought is reasonably relevant.

Appellant does not dispute that the information sought here was relevant to the proceedings, nor that it was specified with sufficient definiteness; nor does he claim that the Commission is without general authority to require production of information of this nature. What appellant does claim is that while the Commission could have required production of the materials sought here in a *pre*-complaint investigation, it could not, as it has interpreted its own rules, seek such information via *post*-complaint discovery procedures.[15] Appellant cites the Commission's 1967 ruling in *All-State Industries of North Carolina, Inc.,*[16] which set forth the Commission's view that an order to produce documents, made after the issuance of a complaint in an adjudicative proceeding, which is "overly broad" and "basically investigative in nature," is, "outside the scope of the Commission's intended discovery processes."[17] Under *All-State*, appellant claims, if a subpoena issued subsequent to a complaint seeks information of a type normally sought via pre-complaint investigation, then the subpoena is overly broad and hence unenforceable.

█ We cannot agree with appellant's argument on this point for two reasons. First, the *All-State* opinion itself does not support appellant's contention that the Commission's rules give him an unqualified right to withhold information if such data is of a type that normally would be obtained prior to issuance of a complaint. Rather, the Commission in *All-State* found that the order to produce documents there was excessively broad and was also deficient in form.[18] The Commission expressly recognized however, that there might be "innumerable instances where * * * broad specifications may be generally relevant, reasonable in scope, and within the bounds of proper discovery,"[19] provided there was some reason presented for any fail-

14. 296 F.2d 861, 866 (8th Cir. 1961).

15. The Commission's rules provide for the use of subpoenas in pre-complaint investigations, 16 C.F.R. § 2.7, as well as in post-complaint discovery, 16 C.F.R. § 3.34 (b) (1). The latter rule, which is the one involved in the instant case, provides:

(b) *Subpoenas duces tecum.* (1) Application for issuance of a subpoena requiring a person to appear and depose or testify and to produce specified documents, papers, books, or other physical exhibits at the taking of a deposition, or at a prehearing conference, or at an adjudicative hearing shall be made in writing to the hearing examiner, and shall specify as exactly as possible the material to be produced, showing the general relevancy of the material and the reasonableness of the scope of the subpoena. Any motion to limit or quash such subpoena shall be filed within ten (10) days after service thereof, or within such other time as the hearing examiner may allow.

We note that nothing in the rule itself restricts the scope of discovery in the manner that appellant here urges.

16. Dkt. 8738, 3 CCH Trade Reg.Rep. ¶ 18,-103 (13 Nov. 1967).

17. *Id.*

18. Thus in *All-State* the hearing examiner had issued a document entitled an "order" which was not authorized by the then controlling Commission rules of practice. In reviewing the objections to this order the Commission did not hold that its deficiencies entitled the respondent to avoid altogether producing the information sought. Rather, the Commission stated:

In short, we have been presented with a legal chimera. It has the head of an order for the production of documents, the body of a broad investigational subpoena, and the tail of an order requiring access. While we cannot condone the existence of such a creature, upon proper application by complaint counsel the examiner is fully empowered to issue a more limited and unified order which measures up to the letter and spirit of the current rules of practice.

19. *Id.*

ure to specify the necessary documents more exactly and for the inability to obtain the requested information by other means. Here, however, as the Government points out, appellant does not deny that the needed documents are exactly specified, reasonably limited in time and scope, and that the subpoena is in proper form. Furthermore, appellant makes no claim that the information sought could or should have been obtained from him by other means.

Moreover, some nine months after the *All-State* opinion, the Commission issued a "Supplemental Clarifying Opinion" [20] which in essence stated that the original *All-State* opinion was not intended to affect the basic rule that the validity of a post-complaint subpoena is to be tested solely by the relevance of the information sought to the charges of the complaint,[21] and not by the sufficiency or insufficiency of the pre-complaint investigation. The Commission further emphasized that "a discovery request made by complaint counsel is not open to objection on the ground that the materials sought should have been in hand at the time of issuance of the complaint." [22] The reason for this, said the Commission, is that

> Were it otherwise, the hearing examiner, the Commission, and a reviewing court would be confronted with the well-nigh impossible task of determining, not whether the allegations of the complaint are supported by evidence, but whether the pre-complaint investigation was proper or sufficient. The proceeding would become converted into a trial of the scope and adequacy

of the pre-complaint investigation. To introduce such collateral matters into the hearing would invite inexcusable delay.[23]

And it was avoidance of delay at the adjudication stage, by encouraging full pre-complaint investigation, which was the Commission's purpose in the original *All-State* opinion. With this in mind, we cannot accept appellant's interpretation of *All-State* as providing the opportunity for delay by allowing a challenge to a post-complaint subpoena based upon an alleged deficiency in the pre-complaint investigation.

Secondly, even assuming that the Commission's rules, as interpreted in *All-State*, forbid the use of an "investigatory" subpoena after issuance of a complaint, it is quite clear that in the instant case the subpoena, although asking for material of a type normally sought in a pre-complaint investigation, was not actually investigatory in the sense that the information sought was necessary to determine whether there was cause to file a complaint. That this is so is shown by the fact that appellant complains only of the specifications which requested information relative to the Virginia Concrete and Falls City acquisitions.[24] The Commission became aware of those two acquisitions only after it had completed an investigation and issued a proposed complaint with respect to two other acquisitions of Lehigh (Materials Service and Acme). From this perspective it seems quite probable that the Commission's knowledge of conditions in the cement industry generally (at the time of the

---

20. All-State Industries of North Carolina, Inc., Dkt. 8738, 3 CCH Trade Reg.Rep. ¶ 18,503 (9 August 1968) (hereafter, All-State II).

21. *See* Adams v. FTC, 296 F.2d 861, 867 (8th Cir. 1961).

22. All-State II.

23. *Id.*

24. The Commission initially investigated Lehigh's acquisition of two ready-mixed concrete producers, Materials Service Corporation (Materials Service) of Orlando, Florida, and Acme Concrete Co. (Acme)

of Miami, Florida. After the investigation was completed but before a final complaint issued, the Commission learned of Lehigh's acquisition of two more ready-mixed concrete firms, Falls City Concrete and Stone Co., Inc. (Falls City), of Fern Creek, Kentucky, and Virginia Concrete Co., Inc. (Virginia Concrete), of Springfield, Virginia. A complaint was then issued covering all four of these acquisitions. Subsequently, the Commission discovered yet another acquisition, Cement Block Industries of Miami, Inc., of Miami, Florida, and an amended complaint was then issued covering all five acquisitions.

hearing the Commission had commenced nine other Clayton Act merger proceedings against companies in the cement industry), together with the investigation of the Materials Service and Acme acquisitions, gave it sufficient cause to believe that the Virginia Concrete and Falls City acquisitions also violated the Clayton Act. Thus, the prompt issuance of a complaint without further investigation with respect to the latter acquisitions appears to have been simply prudent regulatory action. Already supplied with sufficient information to support the belief that the latter two acquisitions were probably unlawful, the Commission, in the interest of efficiency, rather than delay the already instituted proceedings with respect to the first two acquisitions, simply issued a complaint covering all four mergers and proceeded by post-complaint subpoenas to require production of the specific information needed as evidence to demonstrate the Section 7 violations.

For the reasons stated we find that the subpoena here in question was not issued in violation of the Commission's rules of procedure and that it was properly enforced by the District Court.

 Since the grounds advanced by appellant for resisting the subpoena were without merit, the District Court was clearly within the proper exercise of its discretion in refusing to permit the requested discovery in the subpoena enforcement proceeding. Rule 81(a) (3) of the Federal Rules of Civil Procedure provides that the Federal Rules, including those governing discovery,

> apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States *except as otherwise provided* by statute or by rules of the district court, or *by order of the court in the proceedings*. (Emphasis added.)

This rule has been interpreted as being "drawn so as to permit application of any of the Rules in the proceedings whenever the district court deems them helpful." [25] Whether or not to allow discovery in a subpoena enforcement proceeding is thus clearly discretionary with the district court. That discretion was not abused here.

Affirmed.

---

25. 9 Moore, Federal Practice, ¶ 81.06 [1] (1954).