**UNITED STATES of America,
Petitioner,**

v.

**The FIRESTONE TIRE AND RUBBER
COMPANY, Respondent.**

**Misc. No. 78–200.**

United States District Court,
District of Columbia.

Aug. 15, 1978.

Robert J. Franzinger, U. S. Dept. of Justice, Washington, D. C., Joseph J. Levin, Jr., Chief Counsel, David W. Allen, Asst. Chief Counsel for Litigation, Allan J. Kam, Cleveland Thornton, Jeff Godwin, Attys.,

Office of Chief Counsel, Nat. Highway Traffic Safety Admin., for petitioner.

John A. Macleod, Jones, Day, Reavis & Pogue, Washington, D. C., Patrick F. McCartan, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for respondent.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the court on the petition of the United States to enforce a "special order" issued by the National Highway Traffic Safety Administration, a division of the Department of Transportation, requiring the Firestone Tire and Rubber Co. to answer certain interrogatories and produce certain documents relevant to the Administration's (hereinafter NHTSA) investigation into alleged defects in steel-belted radial tires manufactured by Firestone. NHTSA is empowered to issue such "special orders", which are akin to administrative subpoenas, pursuant to 15 U.S.C. § 1401(c) and 49 C.F.R. part 510 as amended by 42 Fed.Reg. 64628 (Dec. 27, 1977). Apparently, since December, 1977, NHTSA has been attempting to secure information from Firestone relevant to this investigation. NHTSA sent Firestone an information request with a 20-day response deadline on December 20, 1977. After Firestone indicated that it would take longer than 20 days to compile the requested information, a short extension was granted. Firestone filed several partial responses to the information request through the early part of 1978, but continued to indicate that even as late as March, 1978, there was still insufficient time to comply with the request. Finally, on April 26, 1978, four months after the original information request was filed, Firestone filed its "final" responses. However, it appears that these "final" responses failed to provide information responsive to certain of the requests, and that no justification was offered for these omissions. Specifically, Firestone failed to provide: (1) 1975 consumer complaint letters (Request 3); (2) warranty adjustment reports (Request 4); (3) results of Firestone investigations into accidents purportedly leading to

accidents due to tire failure (Request 7); (4) factual bases for lawsuits; and (5) various documents requested in Requests 10 and 11. It was in light of these failures to respond that NHTSA issued its special order, the provisions of which are detailed, *infra.* Firestone's failure to comply with the special order has led NHTSA to file this enforcement action. On the eve of the hearing on this enforcement petition, Firestone filed, along with its response to the petition, a motion to dismiss the petition or in the alternative to transfer this proceeding to the Northern District of Ohio. The government had no opportunity to respond to this motion before the hearing, but attempted to argue the motion nonetheless. Since the hearing, pursuant to this court's request, the parties have filed supplemental memoranda regarding this motion. This entire matter may now be decided, and the court will discuss the procedural and jurisdictional points raised by the motion to dismiss or to transfer before proceeding to the merits of this enforcement action.

I. *Respondent's Motion to Dismiss or to Transfer.*

Respondent's motion contains five arguments. First, Firestone argues that this petition should be dismissed since this District is not the proper venue within the meaning of 15 U.S.C. § 1401(c)(4). Second, Firestone asserts that if dismissal is not warranted by the impropriety of venue, then this case should be transferred to the Northern District of Ohio for the convenience of witnesses and because another proceeding involving Firestone and NHTSA is currently pending in that district. Third, Firestone contends that even if venue is proper, this matter should still be dismissed since NHTSA lacks extraterritorial subpoena powers, and thus the service of the subpoena on Firestone in Ohio was invalid. Fourth, Firestone asserts that this court lacks personal jurisdiction over respondent. Finally, Firestone argues that NHTSA failed to establish an administrative review procedure before seeking court enforcement

of the special order, and that thereby NHTSA has in some way failed to exhaust administrative remedies. Each of these arguments will be analyzed separately.

### A. Venue: 15 U.S.C. § 1401(c)(4).

The National Traffic and Motor Vehicle Safety Act, as amended, 15 U.S.C. § 1401(c)(4) (1976) provides for a specific venue for enforcement proceedings of this type:

> Any of the district courts of the United States within the jurisdiction of which an inquiry is carried on may, in the case of contumacy or refusal to obey a subpoena or order of the Secretary or such officer or employee issued under paragraph (1) or paragraph (3) of this subsection, issue an order requiring compliance therewith; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

Firestone asserts that this is not a district "within the jurisdiction of which an inquiry is carried on," and that therefore dismissal is warranted. In support of this contention, Firestone states that its corporate headquarters are in Akron, Ohio, and that most of the information required is also located in Akron, Ohio. Furthermore, Firestone contends that the Northern District of Ohio is already the site of pending litigation between Firestone and NHTSA and that therefore no enforcement may be had in this district.

It appears that the interpretation of the venue provision in the National Traffic and Motor Vehicle Safety Act, as amended, is a matter of first impression. However, as both parties in this proceeding have indicated, the venue provision in 15 U.S.C. § 1401(c)(4) is exactly the same as that found in section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49. The court may, therefore, look to cases interpreting section 49 for guidance in the case at hand.

█ Among the factors which this court may consider in determining the propriety of a particular venue under these sections are the convenience of NHTSA, the location of documents and witnesses, and the loca-

tion of respondent's corporate headquarters. *F. T. C. v. MacArthur*, 532 F.2d 1135, 1140 (7th Cir. 1976). In any event, NHTSA's choice of a place of inquiry is "subject to the bound of reasonableness." *Id.* Accord, *F. T. C. v. Cockrell*, 431 F.Supp. 558, 559 (D.D.C.1977). This bound of reasonableness is a loose limitation, however. For example, in *F. T. C. v. MacArthur, supra*, a case on which respondents heavily rely, the Commission was conducting a non-public investigation into possibly deceptive trade practices committed by Bankers Life and Casualty Co. with regard to the sale of a subdivision in Colorado. The commission's office in Kansas City, Missouri issued a subpoena requiring one of Bankers Life's officers to testify. Return of the subpoena was set in Chicago, wherein was located Bankers Life's corporate headquarters. By agreement, return was transferred to Florida. When the subpoenaed officer refused to supply certain information at the Florida meeting, the F.T.C. sought enforcement of the subpoena in the Northern District of Illinois. The district court held, and the Seventh Circuit affirmed, that since the hearing was originally scheduled for Chicago, and since Bankers Life's corporate headquarters and supporting documentation were located in Chicago, it was not beyond the bound of reasonableness to conclude that the Northern District of Illinois was a district within the jurisdiction of which an inquiry was taking place. 532 F.2d at 1138–40.

This liberal construction of the bound of reasonableness has been adopted in this Circuit. In *F. T. C. v. Browning*, 140 U.S.App. D.C. 292, 435 F.2d 96 (1970), the court found that the District of Columbia was a place in which an inquiry was being carried on when the F.T.C. was investigating antitrust violations in the acquisition of concrete firms in three different states. In *F. T. C. v. Cockrell*, 431 F.Supp. 558, 559 (D.D.C.1977), the court held that when the agency's investigation was not concerned with respondent's actions within a specific, localized area, but rather was nationwide in scope, then it did not exceed the bounds of reasonableness to

hold that the District of Columbia was a place in which the inquiry was being carried on.

■ Application of this liberal view of the venue requirement is eminently justified in the case now before the court. Congress intended that the Secretary of Transportation, and by delegation NHTSA, should have broad investigative power so as to insure highway traffic safety. H.Rep. 93–1191, 93rd Cong., 2d Sess., *as reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 6046, 6070–71. It would be contrary to this intent, and contrary to reason, to circumscribe NHTSA's enforcement powers in the way Firestone has suggested. This is especially true when the focus of NHTSA's investigation is a corporation as large as Firestone. Although Firestone's corporate headquarters are located in Akron, its tire manufacturing facilities are scattered at numerous sites across the nation. Firestone tires are sold and used in every state, and Firestone also manufactures tires for sale under the trademarks of other companies and distributors. NHTSA's concern is not with the activities of Firestone within the Northern District of Ohio, but with the safety of all Firestone tires in the country. As such, given the broad nature of NHTSA's concern in this case, this would appear to qualify as a nationwide inquiry within the meaning of *F. T. C. v. Cockrell, supra.* Therefore, since this investigation is directed from Washington, D. C., it does not exceed the bounds of reasonableness to find that the District of Columbia is a place within which this inquiry is being carried on.[1] This is not, of course, to say that venue might not also be proper in the Northern District of Ohio. The fact that part of an investigation is carried on within one district does not preclude the possibility that another part may take place in another district, thereby qualifying both as proper venues for enforcement actions. *F. T. C. v. MacArthur, supra,* 532 F.2d at 1140. In the exercise of its statutory mandate to act to protect public traffic safety, NHTSA must be allowed to carry on wide-ranging investigations. This necessarily means that a number of venues at any one time would be proper for enforcement proceedings. To find otherwise would be to hamper the broad investigatory powers Congress intended NHTSA to have. It is, therefore, apparent that venue in this district is proper and respondent's first argument must be rejected.

*B. Transfer to the Northern District of Ohio.*

■ As an alternative to dismissing this case for improper venue, respondent urges this court to transfer this proceeding to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a), which states:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Respondent urges the court to transfer this case for two reasons. First, Firestone states that since its corporate headquarters, and most of its important documents and personnel, are located in Akron, Ohio, this proceeding in the District of Columbia is inconvenient. Second, Firestone alleges that since the Northern District of Ohio has before it a suit involving Firestone and NHTSA, this case should be transferred since it would be in the interests of justice to have one court decide both cases. For the reasons indicated below, this court finds that both of these arguments are unmeritorious, and that transfer is, therefore, unnecessary in this case.

1. Respondent has urged the court to accept the rationale of *F. T. C. v. Western Dairies, Inc.,* 432 F.Supp. 31 (N.D.Cal.1977), in which the court held that the fact that a subpoena had issued out of Northern District of California did not automatically make that district a place in which the inquiry was being carried on. However, in that case, the F.T.C. was investigating possible unfair trade practices in the distribu-

tion of milk within Utah and Idaho. The court noted the limited nature of the investigation, *id.* at 33–34, and found no reasonable relation between the choice of forum and the investigation itself. The instant case presents a different situation, involving as it does a nationwide investigation. The *Western Dairies* case, therefore, is inapplicable to the case at hand.

As for the argument based on considerations of convenience, it should be noted, from a purely practical point of view, that due to the lateness of respondent's motion to dismiss or to transfer, this court has already held a hearing on the merits of NHTSA's petition to enforce. It could, therefore, be said that because Firestone failed to raise these issues sooner and in a more timely fashion, any issue of convenience is now moot. However, such considerations aside, it does not appear that the factors indicated by Firestone warrant transfer of this proceeding on the grounds of inconvenience. A proceeding to enforce a subpoena or a special order is summary in nature, and except in the most extraordinary circumstances, discovery and testimony are not allowed. *F. T. C. v. Texaco, Inc.,* 180 U.S.App.D.C. 390, 399–400, 555 F.2d 862, 871–72 (*en banc*), *cert. denied* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). The burdens imposed by such a summary proceeding are clearly less onerous than those accompanying an ordinary civil action. *F. T. C. v. Cockrell, supra,* 431 F.Supp. at 560. Concomitantly, the importance of factors of convenience are reduced when the suit to be transferred is a summary enforcement proceeding. *See id.* This is especially true when the party claiming inconvenience is a corporation of the size and resources of respondent here. *See General Electric Co. v. F. T. C.,* 411 F.Supp. 1004, 1011–12 (N.D.N.Y.1976). Firestone is only negligibly inconvenienced by the presence of the enforcement action in this district. Further, it is not readily apparent that the interests of convenience would be served even if this matter were transferred to the Northern District of Ohio. Specifically, it appears that Firestone does not have ready access to much of the information requested by NHTSA, but must gather this information from around the country. Such activity would not be made any more convenient if this case were to be transferred. Therefore, considerations of convenience fail to justify transfer of this matter.

As for the argument that transferring this case would be in the interest of justice, where venue in the original forum is proper, the moving party bears a heavy burden in attempting to disrupt petitioner's choice of forum, *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), although the court's discretion to grant transfers is somewhat broader under the Judicial Code than at common law. *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). The case now pending before the Northern District of Ohio is a suit to review the agency action in releasing a survey in October, 1977 which Firestone alleges distorts the performance of its tires. Specifically, Firestone alleges in that case that NHTSA failed to obtain the prior approval of the Director of the Office of Management and Budget before instituting the survey as required by 44 U.S.C. §§ 3501, *et seq.,* and that the survey is, therefore, invalid. Clearly, the review that the court will conduct in that case has little to do with the summary enforcement proceeding now before the court. No appreciable benefit will accrue to either party if a transfer were to be ordered. Indeed, the delay attendant to such a transfer, requiring as it would a new hearing and briefing schedule, would certainly not be in the interests of justice. Furthermore, since this is a nationwide investigation, permitting the requested transfer may result in the possibility of conflicting rulings from different courts across the nation. For these reasons, and since venue is proper here, respondent's request for a transfer should be denied.

### C. Scope of NHTSA's Power to Issue Subpoenas and Special Orders.

Firestone's third argument in support of its motion to dismiss this petition is that NHTSA lacks the authority to issue subpoenas and special orders anywhere in the nation, and that, therefore, the issuance of this special order against Firestone in Ohio was invalid. It is true that, unlike the Federal Trade Commission Act, the National Traffic and Motor Vehicle Safety Act contains no specific authorization for nationwide administrative process. However, petitioner has urged the court to find an

implied grant of such authority in 15 U.S.C. § 1401(c) on the grounds that without such power, the other Congressional grants of investigative authority are meaningless.

▪ Aside from the statement in the House Committee report that the Secretary of Transportation, and his delegates, should enjoy a wide-ranging investigative power, the authority which NHTSA seeks to exercise in this proceeding was subject to little or no meaningful discussion before enactment into law. This paucity of legislative history forces the court to consider only the statute itself, and as indicated earlier, these provisions lack specificity. However, although the statutory language on this issue may be less than definitive, it is nevertheless definite in providing for broad investigative authority. Section 1401(c)(1) provides:

> For the purpose of carrying out the provisions of this subchapter, the Secretary, or on the authorization of the Secretary, any officer or employee of the Department of Transportation may hold such hearings, take such testimony, *sit and act at such times and places*, administer such oaths, and *require, by subpoena or otherwise*, the attendance and testimony of such witnesses and the production of such books, papers, correspondence, memorandums, contracts, agreements, or other records *as the Secretary, or such officer or employee, deems advisable.*

(Emphasis added.) Similarly, section 1401(c)(3) provides that the Secretary, by issuance of a general or special order, may require "any person" to file answers to specific questions or reports "in such form as the Secretary may prescribe." Firestone's proposal, if accepted, would undoubtedly limit the broad powers provided by Congress. It is a well-accepted tenet of statutory construction that, whenever possible, a statute should be interpreted as a harmonious whole. *United States v. Snider*, 502 F.2d 645, 652 (4th Cir. 1974). *See* 3 Sutherland, *Statutory Construction* (4th ed.) § 46.-05. Similarly, one part of a statute must not be construed so as to render another part meaningless. *Helvering v. Morgan's,*

*Inc.*, 293 U.S. 121, 126–27, 55 S.Ct. 60, 62, 79 L.Ed. 232 (1934). To limit NHTSA's power to issue subpoenas and special orders in the way suggested by Firestone would mean that the Secretary, through his delegate, would not be able to "sit and act at such times and places . . . as the Secretary, or such officer or employee, deems advisable." Rather, NHTSA's investigative efforts would be fragmented and actions limited to those districts in which witnesses happened to reside. Not only would such a limitation be incongruous with the broad enforcement jurisdiction conferred upon federal district courts, *see* discussion, *infra*, but it would also be inconsistent with Congress' desire to give the Secretary and his delegates the broad investigative powers necessary to protect public safety. Firestone's position is, therefore, unacceptable. This court finds that NHTSA had the authority to issue the special order in question.

*D. Personal Jurisdiction.*

▪ Having determined that NHTSA has the authority to issue administrative process nationwide, it is not difficult to find that this court does have personal jurisdiction over Firestone. Firestone has argued that since Firestone's corporate headquarters were in Akron, only the federal court for the Northern District of Ohio would have the jurisdiction to enforce a subpoena or special order issued against Firestone. Petitioner argues that the venue provision of 15 U.S.C.A. § 1401(c)(4) is actually an implied grant of the authority for extraterritorial service of process. The basis for petitioner's contention is the fact that section 1401(c)(4) contains the same language as section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, and that section 9 has been interpreted as such an implied jurisdictional grant. *F. T. C. v. Browning*, 140 U.S.App.D.C. 292, 294–296, 435 F.2d 96, 98–100 (1970).

Respondent has attempted to distinguish the holding in *Browning, supra,* on the ground that the Circuit court predicted its holding in that case on the fact that the F.T.C. had the power to issue administra-

tive process nationwide, whereas in the present case, Firestone contends NHTSA possesses no such power. However, as indicated above, NHTSA does have the authority to issue nationwide administrative process. As a result, the holding in *Browning* controls this issue in this case. The *Browning* court stated:

> In our view, by granting the power to enforce subpoenas only to those district courts "within the jurisdiction of which such inquiry is carried on," Section 9 so limits the place of suit for enforcement of Federal Trade Commission subpoenas as to require an implied grant of authority for extra-territorial service of process in order to effectuate the purpose of the regulatory scheme.

*Id.* 140 U.S.App.D.C. at 296, 435 F.2d at 100. (Footnote omitted.) Since venue is proper in this court, it would appear that section 1401(c)(4) grants this court the authority for extraterritorial service of process. As such, this court does have personal jurisdiction over respondent in this proceeding.

### E. Exhaustion of Administrative Remedies.

Firestone's final contention in support of its motion to dismiss the petition is the rather novel argument that NHTSA, since it has failed to provide some sort of administrative review proceeding before seeking enforcement of its special order, has failed to exhaust administrative remedies. NHTSA has issued interim regulations governing its information-gathering powers. 49 C.F.R. part 410, 42 Fed.Reg. 64628 (Dec. 27, 1977). These regulations provide that a person or company under subpoena may file a motion to quash or to limit the scope of the subpoena with the Deputy Administrator. 49 C.F.R. § 510.4. However, no such administrative procedure is provided for general or special orders. *See* 49 C.F.R. § 510.6. Firestone alleges that this, plus the fact that the F.T.C., operating under a similar statute, has instituted an administrative review procedure, indicates that NHTSA's actions are deficient.

The fact that other agencies, operating under different statutes and perhaps considering different policy factors, may have instituted certain administrative procedures does not make the creation of such processes mandatory. Similarly, the fact that NHTSA allows the filing of motions to quash or to limit subpoenas at the administrative level does not obligate petitioner to do the same for general or special orders. Indeed, this case does not present a situation in which further administrative review might be helpful. Despite respondent's protestations, there do not appear to be any issues of fact which could have been clarified at the administrative level. Petitioner has found Firestone's responses to the special order to be almost totally deficient, and the record reflects that Firestone has provided little or no information to NHTSA in response to this order. To argue, therefore, that a hearing at the administrative level might narrow the issues is at best disingenuous. In addition, the issue of burdensomeness, which may be properly raised during an enforcement proceeding of this type, does not appear to be the type of issue which would require extensive administrative factfinding. In a summary enforcement proceeding, if the court finds, upon application of the relevant legal standards, that the subpoena or special order is enforceable, the court may not at that point modify the subpoena due to other considerations nor investigate issues in collateral areas. *F. T. C. v. Texaco, Inc., supra,* 180 U.S.App.D.C. at 407, 555 F.2d at 879; *F. T. C. v. Anderson,* 442 F.Supp. 1118, 1122 (D.D.C.1977).

It does not appear that NHTSA is under an obligation in this case to provide the type of additional administrative procedure requested by respondent. This court therefore must reject respondent's motion to dismiss or in the alternative to transfer in full, and the court may proceed to the merits of this enforcement proceeding.

### II. Petition to Enforce Special Order.

NHTSA's special order consists of 27 interrogatories, and originally provided a 15-

day response period to April 27, 1978. This was later extended to May 4, 1978. On that date, Firestone submitted a partial response to the special order. Firestone objected to eight interrogatories but indicated that without waiving its objections, it would provide partial responses to the interrogatories. For one question (# 27) an incomplete answer was given with no promise to augment. For another (# 6), Firestone said it would answer the interrogatory only if NHTSA limited its extent. As to the remaining 17 interrogatories, Firestone refuses to answer at all. Firestone has not objected to each interrogatory separately, but has listed a number of grounds as justification for its refusals. These reasons are: (1) the special order is unreasonably burdensome; (2) the special order as written exceeds NHTSA's authority to issue; (3) the special order was not properly authorized by the Secretary of Transportation; (4) NHTSA has failed to specify which of the interrogatories were insufficiently answered.

 Although there appear to be no reported cases in which the "special order" power of NHTSA has been interpreted, the language of 15 U.S.C. § 1401(c) is virtually identical to that of the FTC subpoena power provision in 15 U.S.C. § 49. As such, cases concerning the FTC's power are of some relevance. The Court of Appeals for this Circuit has said that in order for an FTC subpoena to be valid, the information sought must be reasonably relevant to the purpose of the investigation, and the production of such information must not be an undue burden on respondent. *F. T. C. v. Texaco, Inc.,* 180 U.S.App.D.C. 390, 409–11, 555 F.2d 862, 881–83 (1977), *cert. denied* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977); *F. T. C. v. Anderson,* 442 F.Supp. 1118, 1122 (D.D.C.1977). In addition, any subpoena which the government seeks to enforce must relate to an investigation with a legitimate purpose, and must have been issued in accordance with proper administrative procedure. *United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). It is apparent that Firestone's four objections to this special order correspond

roughly to these four prerequisites for enforcement of a subpoena. This being so, if this court finds that the special order in issue meets the four requirements for enforcement, then Firestone's complaints will have been answered.

*A. Purpose of the Investigation.*

 15 U.S.C. § 1397(a) empowers the Secretary of Transportation, and by delegation NHTSA, to prohibit the manufacture and sale in interstate commerce any substandard motor vehicle or piece of motor vehicle equipment. 15 U.S.C. § 1401(c) allows for the Secretary, and by delegation NHTSA, to conduct investigations and issue special orders such as the one at issue here, for the accomplishment of any of the purposes outlined in the Act. It is clear that automobile tires are motor vehicle equipment, and since this investigation is aimed at determining the extent to which certain tires manufactured by Firestone may be dangerously defective, it appears that this investigation is being carried on for a lawful purpose. Firestone has alleged that it is being treated more harshly than other similarly situated manufacturers, and that perhaps NHTSA is attempting to harass Firestone. However, the record is void of any evidence of harassment. Therefore, it appears that this special order meets this first criterion.

*B. Issuance according to Proper Administration Procedure.*

 Firestone raises two objections to the procedure by which NHTSA has issued the special order at issue. First, Firestone contends that, pursuant to 15 U.S.C. § 1401(c), only the Secretary of Transportation himself may issue such a special order requiring the production of information. It is true that Section 1401(c) speaks only in terms of what the Secretary may do, and not in terms of what the Secretary or his delegates may do. It is also true that other sections of the Act make it clear that delegation is possible, while this section does not. However, the legislative history does

not support Firestone's reading of this section. The House Interstate and Foreign Commerce Committee, in reporting on the 1974 amendments to the National Traffic and Motor Vehicle Safety Act which increased the enforcement and investigative powers of the Secretary under the Act, indicated that special orders could be issued by the Secretary to gather information in support of his investigations. The Committee further noted that federal district courts would have jurisdiction to enforce "a subpoena or order of the Secretary or his officer or employee." H.Rep.93–1191, 93d Cong., 2d Sess., *as reprinted in* [1974] U.S. Code Cong. & Admin.News pp. 6046, 6071. It is clear that Congress recognized that the special and general orders provided for in section 1401(c)(3) would be issued not solely by the Secretary, but also by one of his officers. Indeed, it would be contrary to reason to expect that the Secretary himself would directly supervise the beginning phases of each and every investigation undertaken pursuant to the Act. Therefore, Firestone's first contention as to the deficiency in the issuance of the special order in question must fail.

■ Firestone's second contention as to deficiencies in the administrative procedures followed by NHTSA in issuing this special order is similarly without merit. Firestone contends that NHTSA is without authority to compel the production of documents or the analysis thereof. In so contending, Firestone first relies on the language in sections 1401(c)(2) that NHTSA shall have "access to . . . and the right to copy" relevant information. Firestone contends that the most that this section would authorize would be for NHTSA to send its representatives to Firestone's headquarters to sift through the documentation which Firestone would provide. Although the legislative history does not speak directly to this point, it is apparent that Congress intended that the Secretary and his delegates should have a broad information-gathering power inconsistent with the extremely limited authority envisioned by Firestone. The House Committee stated that the amendments contained in this section:

authorize[s] the Secretary to conduct informational hearings and to obtain evidence from any person who has any information relevant to the implementation of the Act. Despite the vital importance of information gathering to successful implementation of the Act, the Secretary does not possess general authority for this purpose. This lack is anomalous in view of the extensive information gathering authority in the property damage reduction provisions of the Motor Vehicle Information and Cost Savings Act. This paragraph would give the Secretary similar broad authority in the more important pursuit of preventing highway deaths and injuries.

H.Rep.93–1191, *supra,* [1974] U.S.Code Cong. & Admin.News at 6070–71. It is clear that Congress sought to remedy a perceived lack of investigative authority in the Secretary under this act by granting the Secretary broad information gathering powers. Following Firestone's argument would emasculate these newly-granted investigatory powers. As such, the court must read the requirements of this Act within the context of Congressional intent. The Secretary's investigative power is broad enough to compel the production of documents and the analysis thereof. Indeed, section 1401(c) allows the Secretary to require the preparation of reports by "any person . . . in such form as the Secretary may prescribe . . . ." It is clear, therefore, that the Secretary may require Firestone to analyze certain information Firestone has collected. To state that the Secretary may then be prevented from receiving the documents underlying such reports would be contrary to reason and to the intent of Congress. Thus, the court finds that NHTSA has issued the special order in question in accordance with the required administrative procedures.

### C. Relevance.—NHTSA's alleged Failure to Specify Which Responses are Deficient.

■ The Circuit Court in *F. T. C. v. Texaco, Inc., supra,* stated that it is suffi-

cient to find that the material sought by administrative subpoena is "reasonably relevant" to a legitimate investigatory purpose. 180 U.S.App.D.C. at 402, 555 F.2d at 874 n. 23. Firestone has not specifically raised an objection on the basis of relevancy in this case. However, Firestone has used relevancy-type arguments in alleging that since NHTSA has failed to designate specifically which of the interrogatories were not answered, then the entire motion before the court is overbroad and should be denied. First of all, a reading of the memorandum submitted by petitioner in this case reveals that the government contends that the answers to *all* of the interrogatories were deficient. Petitioner seeks further information in response to all of the questions asked. Secondly, however, to address Firestone's complaint of overbreadth in the scope of the questions and in the scope of this petition, the Circuit Court in *F. T. C. v. Texaco, Inc., supra,* recognized that administrative investigatory subpoenas must by their very nature be broad. The agency need not narrow its focus from the beginning, and it is not for this court to determine whether the information sought is relevant to whatever eventual action the agency might take. This court may look only to the *general* purpose of the investigation and determine if the information sought, however broad, is relevant to that purpose. *Id.* 180 U.S.App.D.C. at 402, 555 F.2d at 874. As indicated above, NHTSA is conducting an investigation with a legitimate purpose in this case. The information sought, although it is extensive, appears to be reasonably relevant to that investigation. Firestone complains that some of the information sought, particularly information regarding consumer feed-back prior to 1974, is irrelevant since NHTSA may not recall equipment when it is more than three years old. 15 U.S.C. § 1400(b). However, to find irrelevance on this ground would be for this court to hypothesize that NHTSA plans to recall as a remedy in this case. NHTSA has a far broader arsenal of remedies which it may invoke in the proper case, such as the levying of fines, 15 U.S.C. § 1398, or the requirement that notification

of defects be sent to consumers, 15 U.S.C. § 1402. Speculation as to the ultimate remedy which may be applied in this case was specifically forbidden by the Circuit Court in *Texaco, supra.* It is sufficient that NHTSA is conducting this investigation to determine whether a safety hazard still exists from equipment which still may be in use. As such, the relevance criterion is also met by the NHTSA special order.

### D. Allegation of Undue Burdensomeness.

The complaint which Firestone has made most consistently and with the most force throughout this case is that the NHTSA special order, with its three week response period, is unduly burdensome. Firestone contends that during the four months after the initial information request and before the issuance of the special order, it was acting in good faith and supplying information as quickly as possible. Firestone alleges that it would take an enormous amount of time (100,000 man hours) and money ($2 million) to comply with the time limit. Firestone also says that it does not have and cannot hire enough trained personnel to do the job, and that forcing it to do so would disrupt Firestone's other business. The government contends that Firestone has had more than six months to date to answer 27 interrogatories, and that Firestone has some nowhere near compliance.

Respondent in a subpoena enforcement action is hard put to attack an administrative subpoena or special order on the grounds of undue burdensomeness. As this Circuit Court stated in *F. T. C. v. Texaco, Inc., supra:*

We emphasize that the question is whether the demand is *unduly* burdensome or *unreasonably* broad. Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest. The burden of showing that the request is unreasonable is on the subpoenaed party. Further, that burden is not easily met where, as here, the agency inquiry is pursuant to a lawful purpose

and the requested documents are relevant to that purpose. Broadness alone is not sufficient justification to refuse enforcement of a subpoena. Thus courts have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business.

180 U.S.App.D.C. at 410, 555 F.2d at 882. The Second Circuit in *S. E. C. v. Wall Street Transcript Corp.,* 422 F.2d 1371 (2d Cir.) *cert. denied* 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970) indicated that a subpoena might be overbroad if it were to "go to the jugular" of a particular business. *Id.* at 1381. Indeed, subpoenas far broader than the special order presently under consideration have been enforced. *See Oklahoma Press Club v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) (records of all trading in interstate commerce during company's history); *S. E. C. v. Wall Street Transcript Corp., supra,* (all correspondence with management, advertisers and subscribers over a four year period).

It cannot be said in this case that Firestone will be severely hampered in conducting its business if it is forced finally to produce information which it has known for six months was being sought. This is not to say that the special order is not extensive. The information requested covers approximately four years, and in addition to general manufacturing information (models of tires, number produced and distributed, etc.), the special order requests information regarding consumer complaints, and suits against Firestone for damages due to accidents allegedly caused by defective tires. Although it might not be unreasonable to expect that NHTSA and Firestone might reach some accommodation and compromise the filing schedule, it is apparent that NHTSA has pursued this information for some time now, and that Firestone's previous "final" response to the information request was seen by NHTSA as deficient in all respects. In light of this, it appears that Firestone has failed to show that the special order is so unduly burdensome as to require nonenforcement. Because NHTSA has satisfied all four criteria for enforcement of the special order, NHTSA's petition to enforce will be granted.