**OCEANAIR OF FLORIDA, INC., and Air Illinois, Inc., Petitioners,**

v.

**UNITED STATES DEPARTMENT OF TRANSPORTATION, Respondent.**

**No. 88–3336.**

United States Court of Appeals, Eleventh Circuit.

July 13, 1989.

J.B. Curasi, Tallahassee, Fla., for petitioners.

Rosalind Avnet Lazarus, U.S. Dept. of Transp., Robert B. Nicholson, Dept. of Justice, Appellate Section, Washington, D.C., for respondent.

---

\* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. 49 U.S.C.App. §§ 1371–89 and 1551(b)(1). The Department does not have responsibility for regulating air safety; that responsibility rests with the Federal Aviation Administration.

Before VANCE and ANDERSON, Circuit Judges, and ATKINS \*, Senior District Judge.

VANCE, Circuit Judge:

Air Illinois, Inc., and its parent company, Oceanair of Florida, Inc., petition this court for review of an order of the Department of Transportation denying reconsideration of the Department's decision to revoke Air Illinois' certificates of public convenience and necessity. At issue is whether the Department properly revoked Air Illinois' certificates on the grounds of dormancy without providing the carrier with an individual evidentiary hearing to contest that decision. We conclude that the Department acted outside the scope of its statutory authority, reverse the Department's order, and remand for an oral evidentiary hearing.

## I. STATUTORY AND REGULATORY BACKGROUND

Under the Federal Aviation Act of 1958, 49 U.S.C.App. §§ 1301–1557, the Department of Transportation is responsible for regulating the economic fitness of air carriers.[1] The Act provides that an air carrier may not engage in air transportation unless it has a current certificate of public convenience and necessity issued by the Department. *Id.* § 1371(a).[2] Before the Department may issue a certificate, it must find that the carrier is economically fit, willing, and able to provide air transportation to the public. *Id.* § 1371(d)(1). Section 401(r) of the Act provides that the economic fitness of air carriers is a continuing requirement for holding a certificate

2. Section 1371(a) refers to certificates "issued by the [Civil Aeronautics] Board." The Board's authority under § 1371(a) and other statutory provisions referred to throughout this opinion, however, has expired and now rests in the Department of Transportation. *See* 49 U.S.C.App. § 1551(b).

and charges the Department with responsibility for ensuring compliance with this requirement:

The requirement that each applicant for a certificate or any other authority under this subchapter must be found to be fit, willing, and able to perform properly the transportation covered by its application and to conform to the provisions of this chapter and the rules, regulations, and requirements of the [Department] under this chapter, shall be a continuing requirement applicable to each such air carrier with respect to the transportation authorized by the [Department]. The [Department] shall by order, entered after notice and hearing, modify, suspend, or revoke such certificate or other authority, in whole or in part, for failure of such air carrier to comply with the continuing requirement that the air carrier be so fit, willing, and able, or for failure to file such reports as the [Department] may deem necessary to determine whether such air carrier is so fit, willing, and able.

*Id.* § 1371(r).

On May 27, 1986, the Department proposed to amend its regulations to improve its ability to discharge its responsibility under § 401(r). 51 Fed.Reg. 19,071–75 (1986). Since the deregulation of the airline industry, the Department had become increasingly concerned with its growing inability to monitor effectively the continuing fitness of dormant carriers. The Department's primary concern was the ability of long-dormant carriers to retain their certificates indefinitely. Although the Department's existing regulations required certificated carriers to submit updated fitness data to the Department after two years of dormancy, nothing in the regulations prevented long-dormant carriers from keeping their certificates even though they had no plans to resume operations. *Id.* at 19,071.

The Department described the impact the inadequacy of its regulations was having on its ability to ensure the continuing fitness of carriers as follows:

"[The] certificates of long-dormant carriers have been, and continue to be, a source for those who seek to avoid our fitness requirements by buying an existing but unused certificate."

.     .     .     .     .

But our concerns go beyond the problem of potential trafficking in certificates alluded to above. They go to something far more fundamental. For we now have come to realize that in a universe so full of dormant certificates, we simply cannot rely upon a system that leaves retention of a certificate solely to the discretion of a dormant carrier to advise us of developments affecting its certificate authority.... [W]e have left ourselves in a position where we often remain uninformed of even the most fundamental changes affecting dormant carriers during the period of their dormancy.

.     .     .     .     .

Where a certificate has long been dormant, our very ability to monitor the holder's status is seriously compromised. During an extended period of dormancy, carriers tend to undergo substantial changes in management, financial resources, and even compliance disposition. They often fail to comply with our insurance and reporting requirements. They may move their offices (often without notifying us), enter into receivership, or even cease to exist. Meanwhile, they retain their certificates, a retention which implies to the world that they have been continued to be found fit by the U.S. Government.

*Id.* at 19,072 (quoting DOT Order 86–1–11).

To give itself the tools it believed were necessary to carry out its § 401(r) responsibilities, the Department proposed to establish a new rule which would require any newly certificated carrier to begin operations within one year or have its authority automatically revoked. *Id.* at 19,073. The new rule, 14 C.F.R. § 204.8 (hereinafter "Regulation 204.8"), was adopted and became effective December 8, 1986. 51 Fed.

Reg. 40,410–14 (1986).[3]

The new rule contains two distinct but related aspects. First, it attempts to alleviate the problem of long-dormant certificates by providing the Department with authority to "revoke automatically" the certificates of carriers that remain dormant for one continuous year beginning on or after December 8, 1986. 14 C.F.R. § 204.8(a)–(b) (1988).[4] Second, it attempts to alleviate the more general problem of the unfitness of dormant carriers by prohibiting any carrier that has become dormant, for any length of time, from resum-

3. The Department established the new rule by rescinding its old § 204.8 and promulgating a new § 204.8. The new rule reads as follows:

**§ 204.8 Revocation for dormancy.**

(a) Except as provided in paragraph (b) of this section, an air carrier that has not begun initial operations to provide any type of air transportation for which it was found fit, willing, and able, and for which it was granted authority by the Department or by the Civil Aeronautics Board, within one year of the date of that finding, or that, for any period of one year after the date of such finding, has not provided any type of air transportation for which that kind of finding is required, shall be deemed no longer to continue to be fit to provide the air transportation for which it was found fit and, accordingly, its authority to provide such air transportation shall be revoked automatically.

(b) For all air carriers that were the object of fitness findings made by the Department of Transportation before the effective date of this rule, or made by the Civil Aeronautics Board, the one-year periods referred to in paragraph (a) of this section shall each run from the effective date of this rule and not from the date of those fitness findings.

(c) An air carrier found fit by the Department of Transportation after the effective date of this rule and that begins initial operations within one year after being found fit but then ceases operations, shall not resume operations without first filing all the data required by § 204.4 or § 204.7, as applicable, at least 45 days before it intends to provide any such air transportation. The Department will entertain requests for exemption from this 45–day advance filing requirement for good cause shown. If there has been no change in data submitted previously in connection with a prior evaluation of the carrier's fitness, the carrier shall file a statement to that effect signed by one of its officers. The carrier may contact the Chief, Special Authorities Division, Office of Aviation Operations, to ascertain the data already available to the Department, which need not be included in the refiling. A carrier to which this paragraph applies shall not provide any air transportation for which it is required to be found fit, willing, and able until the Department either decides that the carrier continues to meet those requirements, or finds that the carrier is fit, willing, and able to perform such air transportation based on new information the carriers submits. During the pendency of the Department's consideration of a data submission under this paragraph, the revocation period set out in paragraph (a) of this section shall be stayed. If the decision or finding by the Department on the issue of the carrier's fitness is favorable, the date of that decision or finding shall be the date considered in applying paragraph (a) of this section.

(d) The provisions of paragraph (c) of this section shall apply to all air carriers that were the object of fitness findings made by the Department before the effective date of this rule or made by the Civil Aeronautics Board, who either are not now operating under the authority for which they were found fit or who are operating under such authority but later cease operations and seek to resume before expiration of the one-year revocation period.

(e) For purposes of this section, the date of a Department decision or finding shall be the service date of the Department's order containing such decision or finding, or, in cases where the Department's decision or finding is made by letter, then the date of such letter.

(f) For purposes of this section, references to operations and to the providing of air transportation shall refer only to the actual performance of flight operations under an operating certificate issued to the carrier by the FAA.

The Department established a similar new rule for all-cargo air carriers by rescinding 14 C.F.R. § 291.15 and promulgating a new 14 C.F.R. § 291.15.

4. The amended regulation actually states that a carrier's "authority" to engage in air transportation, as a opposed to its "certificate," is revoked automatically by a continuous one-year period of dormancy. It is clear, however, that the Department construes the two subsections as authorizing it to automatically revoke the *certificates* of a carrier upon the occurrence of a continuous one-year period of dormancy. This is apparent from the Department's revocation of the certificates of petitioner Air Illinois and other air carriers, as well as the Department's comments during its proposed rulemaking. *See* 51 Fed.Reg. 19,074 (1986) (under amended regulations, carrier dormant for continuous one-year period "would be without a certificate" pending completion of the new certificate process). Accordingly, we assume for the purposes of this case that Regulation 204.8 does provide for the automatic revocation of a carrier's certificates for one year of dormancy.

ing operations without prior Department approval. *Id.* § 204.8(c)–(d).[5] To obtain such approval, a dormant carrier must provide the Department, at least forty-five days in advance of the date it seeks to resume operations, with sufficient data to allow the Department to redetermine the carrier's fitness. *Id.* The Department may waive the forty-five day requirement for good cause. *Id.*

While the two aspects of Regulation 204.8 are related,[6] they have significantly different impacts upon carriers that fall within their provisions. Carriers dormant for less than a year, although prohibited from operating, still retain their certificates and thus need only obtain a redetermination of fitness from the Department to resume operations. Carriers dormant for a year or more, however, lose their certificates altogether and must undergo certification as new carriers to resume operations. *See* 51 Fed.Reg. at 19,074.

## II. REVOCATION OF AIR ILLINOIS' CERTIFICATES

Petitioner Air Illinois held two certificates, one to engage in domestic scheduled air transportation and one to engage in foreign scheduled air transportation. In 1986 the carrier filed for reorganization under chapter 11 of the Bankruptcy Code. As part of its plan of reorganization, it purchased two BAC–400 airplanes from Cascade Airways. Both airplanes, however, produced noise levels that exceeded the maximum levels allowed under Federal Aviation Administration regulations. The FAA denied the carrier's request for an exemption. Because the airplanes were the airline's only aircraft after reorganization, the carrier was forced to cease opera-

tions by September 1, 1986. It has not operated since.

As a result of Air Illinois' financial difficulties and organizational changes, the Department sent the carrier a letter informing it that the Department would take steps to modify, suspend, or revoke the carrier's certificates if it did not provide updated fitness data to the Department so that it could redetermine the carrier's fitness. Air Illinois responded by providing a copy of its bankruptcy reorganization plan and other information. The Department, however, was not satisfied and sent the carrier another letter on July 15, 1987. That letter informed the carrier that the submitted information was insufficient and that under the newly promulgated Regulation 204.8 the carrier was prohibited from resuming operations until the Department could redetermine the carrier's fitness. The Department described the procedures required to obtain a new fitness evaluation and informed the carrier that its certificates would be revoked if it had not complied with these steps and resumed operations within one year of the effective date of the new regulation.

On December 8, 1987, the Department issued two orders revoking the certificates of Air Illinois and several other carriers.[7] Air Illinois requested reconsideration and oral argument, but the Department denied both requests in order 88–3–27. Air Illinois petitions this court for review of that decision.

## III. DISCUSSION

There is no dispute that at no time has the Department provided Air Illinois with the opportunity to contest the revocation of its certificates in an individual evidentiary hearing before the agency. The Depart-

---

**5.** The only exception is that newly certificated carriers have a one-year grace period to begin operations without obtaining prior approval from the Department or obtaining a new fitness finding. Even carriers certificated for less than a year, however, must obtain approval from the Department to operate if they begin operations and then cease operating.

**6.** For example, subsections (c) and (d) prevent a dormant carrier from unilaterally redetermin-

ing its own fitness and resuming operations merely to avoid the automatic revocation provision of subsections (a) and (b).

**7.** In order 87–12–21, the Department revoked the certificates of fifty-nine carriers to engage in domestic scheduled air transportation. In order 87–12–57, the Department revoked the certificates of twenty-six carriers to engage in foreign scheduled air transportation.

ment contends that it had no obligation to provide Air Illinois with an individual evidentiary hearing because the carrier concedes that it had been dormant for one year as of December 8, 1987. Regulation 204.8 provides for the automatic revocation of a carrier's certificates in such an instance. Therefore, the Department argues, no evidentiary hearing was necessary. An administrative agency, however, is a creature of Congress and has no authority beyond that granted by Congress. *See Civil Aeronautics Bd. v. Delta Air Lines, Inc.,* 367 U.S. 316, 322, 81 S.Ct. 1611, 1617, 6 L.Ed.2d 869 (1961). The question we must answer, therefore, is whether the automatic revocation provision of Regulation 204.8 conflicts with the intent of Congress.

■ In *United States v. Storer Broadcasting Co.,* 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956), the Supreme Court upheld three regulations of the Federal Communications Commission that were designed to avoid the overconcentration of broadcast facilities. *Id.* at 193, 76 S.Ct. at 765. Although Congress had not explicitly authorized the new regulations, the Supreme Court concluded that the rules were valid under the agency's general rulemaking power. In reaching its decision, the Court discussed general inferences that can be drawn as to the scope of an administrative agency's general rulemaking power:

> This Commission, like other agencies, deals with the public interest.... Its authority covers new and rapidly developing fields. Congress sought to create regulation for public protection.... The growing complexity of our economy induced the Congress to place regulation of businesses like communication in specialized agencies with broad powers. Courts are slow to interfere with their conclusions when reconcilable with statutory directions.

*Id.* at 203, 76 S.Ct. at 770. (footnote and citation omitted) Under *Storer,* therefore, courts generally should not infer that Con-

gress intended to restrict an agency's broad power to establish rules that the agency has concluded are necessary to perform its statutorily-mandated regulatory responsibilities unless Congress has explicitly so provided.

■ In subsections (c) and (d) of Regulation 204.8, the Department in effect has established a rule in which a carrier is presumed to be unfit, until otherwise shown, simply because it is dormant. A certificated carrier, of course, is not necessarily unfit just because it is dormant. By creating a presumption of unfitness based on dormancy, however, the Department merely has placed upon the dormant carrier the burden of keeping the Department informed of the carrier's fitness. *Storer* requires that we give substantial deference to the Department's conclusion that such a rule is necessary to ensure the continuing fitness of carriers under § 401(r). Because § 401(r) also does not specifically prohibit such a rule,[8] we conclude that subsections (c) and (d) are valid.

■ In subsections (a) and (b) of Regulation 204.8, however, the Department has attempted to give itself authority that Congress has explicitly said the agency does not have. Section 401(r) states that the Department "shall by order, entered after notice and hearing, modify, suspend, or revoke" a certificate for unfitness. We conclude that by using the words "notice and hearing," Congress meant that the Department must provide an individual oral evidentiary hearing to a carrier before revoking its certificates for dormancy.

When a statute provides for a hearing before an administrative agency, the party potentially aggrieved by adverse agency action "is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d); *see also id.* § 554(a). The hearing required by § 401(r) is no exception to this rule. Section 401(p)(1) of

---

**8.** If anything, by referring to reports that the Department "may deem necessary to determine whether such air carrier is so fit, willing, and able," § 401(r) contemplates the authority of the Department to establish such a rule.

the Aviation Act does provide that the Department "shall promulgate rules establishing simplified procedures for ... the alteration, amendment, modification, suspension, or transfer of all or any part of any certificate pursuant to subsection (f), (g), or (h) of this section." 49 U.S.C.App. § 1371(p)(1). In establishing such rules, the Department "shall provide for adequate notice and an opportunity for any interested person to file appropriate written evidence and argument, but need not provide for oral evidentiary hearings." *Id.* Conspicuously absent from § 401(p)(1), however, is any reference to § 401(r).

In *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961), the Supreme Court struck down the Civil Aeronautic Board's attempt to disregard the notice and hearing requirement of § 401(g) of the Aviation Act. The Court stated the following:

> [W]hile there is no legislative history directly on point, the background of the Aviation Act strongly supports what we believe to be the plain meaning of ... [§ 401](g). It is clear from the statements of the supporters of the predecessor of the Aviation Act—the Civil Aeronautics Act of 1938—that Congress was vitally concerned with what has been called "security of route"—i.e., providing assurance to the carrier that its *investment in operations* would be protected insofar as reasonably possible.... [T]o the extent there are uncertainties over the Board's power to alter effective certificates, there is an identifiable congressional intent that these uncertainties be resolved in favor of the certificated carrier and that the specific instructions set

out in the statute should not be modified by resort to such generalities as "administrative flexibility" and "implied powers."

*Id.* at 324–25, 81 S.Ct. at 1619 (emphasis in original) (footnote omitted). Congress added § 401(r) to the Aviation Act when it enacted the Airline Deregulation Act of 1978. Pub.L. 95–504, 92 Stat. 1705 (1978). Nothing in the legislative history of the Airline Deregulation Act reveals that there has been any change in Congress' intent that uncertainties over the Department's power must be resolved in favor of the certificated carrier. *See* H.R.Rep. No. 95–1211, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 3737. We therefore hold that the automatic revocation provision of Regulation 204.8 is invalid.

## IV. CONCLUSION

Although the Department revoked Air Illinois' certificates under an invalid provision of Regulation 204.8, § 401(r) nonetheless authorizes the Department to modify, suspend, or revoke a certificate if a carrier is not fit, willing, and able to provide air transportation. Air Illinois concedes that currently it is unable to provide air transportation (the carrier's only aircraft exceed FAA noise limitations).[9] Accordingly, the proper resolution of this appeal is to remand the case to the Department for further proceedings.[10] Order 88–3–27 therefore is reversed and the case remanded to the Department for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

9. Air Illinois contends that the FAA acted arbitrarily and capriciously in denying it an exemption to the FAA's noise regulations. That issue, however, is not properly before this court.

10. The Department also argues that there are no material facts in dispute that could have an effect on the Department's decision concerning Air Illinois' certificates and therefore no hearing is required. *See Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973) (neither statute providing for "notice and hearing" nor due process requires hearing when there are no material is-

sues of fact in dispute). Although Air Illinois concedes that currently it is not able to operate because its only aircraft exceed the maximum noise levels allowed under FAA regulations, it asserts that it is in the process of modifying its aircraft to comply with the noise level requirements. Because § 401(r) provides for the modification, suspension, *or* revocation of a certificate for unfitness, the mere inability to operate does not render revocation of a carrier's certificate a foregone conclusion. Consequently, material facts are in dispute and a remand is warranted.