# Whether the Federal Trade Commission Has Authority to Prosecute Actions for Criminal Contempt

The Federal Trade Commission lacks authority to prosecute actions for criminal contempt, unless the Commission's attorneys receive special appointments from the Attorney General and become subject to his direction.

September 25, 1989

MEMORANDUM OPINION FOR THE ACTING ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION

This memorandum responds to your request for the opinion of this Office as to whether the Federal Trade Commission ("FTC" or "Commission") has authority to prosecute actions for criminal contempt. We conclude that the Commission lacks authority to prosecute such actions, unless the Commission's attorneys receive special appointments from the Attorney General and become subject to his direction.

## I.

A court of the United States has the power to "punish by fine or imprisonment ... such contempt of its authority, and none other, as ... [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). Where an alleged criminal contempt arises from disobedience to a court order in a case that the Commission has brought or defended, the Commission asserts ¯the authority, upon appointment by the court, to prosecute the contempt. *See* Letter for Robert N. Ford, Deputy Assistant Attorney General, Civil Division, from Amanda B. Pederson, Deputy Director of Consumer Protection, Federal Trade Commission at 1 (June 24, 1985) ("Pederson Letter"). The Civil Division and the Criminal Division both take the view that the Commission is without authority to conduct such prosecutions. *See* Letter for Amanda B. Pederson, from Robert N. Ford (June 10, 1985); Memorandum for Margaret Love, Attorney-Advisor, Office of Legal Counsel, from Lawrence Lippe, Chief, General Litigation and Legal Advice Section, Criminal Division (Oct. 28, 1985).

Under 28 U.S.C. § 516, the Attorney General, "[e]xcept as otherwise authorized by law," has control over "the conduct of litigation in which

the United States, an agency, or officer thereof is a party, or is interested."
*See also* 28 U.S.C. § 519.[1] The principle that the Attorney General has ple-
nary authority over such litigation applies with particular force in crimi-
nal cases. *See United States v. Nixon*, 418 U.S. 683, 694 (1974) ("Under
the authority of Art. II, § 2, Congress has vested in the Attorney General
the power to conduct the criminal litigation of the United States
Government.") (citing 28 U.S.C. § 516). Therefore, the Commission may
not bring an action for criminal contempt unless clearly "authorized by
law" to do so. *Cf. United States v. International Union of Operating
Eng'rs*, 638 F.2d 1161, 1162 (9th Cir. 1979), *cert. denied*, 444 U.S. 1077
(1980) (noting "a presumption against a congressional intention to limit
the power of the Attorney General to prosecute offenses under the crim-
inal laws of the United States," in rejecting argument that United States
must exhaust administrative remedies before bringing criminal case).

We do not believe that the Commission is authorized by the FTC Act,
ch. 311, 38 Stat. 717 (codified as amended at 15 U.S.C. §§ 41-58), or any
other statute to prosecute actions for criminal contempt. The
Commission's statutory authority to litigate on its own behalf is confined
to civil proceedings. *See* 15 U.S.C. § 56(a)(1)(A) & (a)(2) (stating that the
Commission may "commence, defend, or intervene in" various kinds of
"civil action[s]"); *see also* 15 U.S.C. § 56(a)(3)(A) (referring to "any civil
action in which the Commission represented itself").[2] The FTC Act, how-
ever, expressly assigns to the Attorney General the responsibility for

---

[1] This Office has previously concluded

> [A]bsent clear legislative directives to the contrary, the Attorney General has full plenary
> authority over all litigation, civil and criminal, to which the United States, its agencies, or
> departments, are parties. Such authority is rooted historically in our common law and tradi-
> tion, *see Confiscation Cases*, 74 U.S. (7 Wall ) 454, 458-59 (1866) and, since 1870, has been
> given a statutory basis. *See* 5 U.S.C. § 3106, and 28 U S.C §§ 516, 519. The Attorney General's
> plenary authority is circumscribed only by the duty imposed on the President under Article
> II, § 3 of the Constitution to "take Care that the Laws be faithfully executed "

*Attorney General's Role as Chief Litigator for the United States*, 6 Op O L C. 47, 48 (1982) (citation
omitted).

[2] 15 U.S.C. § 56(a) reads, in relevant part:

> (1) Except as otherwise provided in paragraph (2) or (3), if —
>> (A) before commencing, defending, or intervening in, any civil action involving [sec-
>> tions 41 to 46 and 47 to 58 of this title] (including an action to collect a civil penalty)
>> which the Commission, or the Attorney General on behalf of the Commission, is autho-
>> rized to commence, defend, or intervene in, the Commission gives written notification
>> and undertakes to consult with the Attorney General with respect to such action, and
>> (B) The Attorney General fails within 45 days after the receipt of such notification to
>> commence, defend, or intervene in, such action;
> the Commission may commence, defend, or intervene in, and supervise the litigation or, such
> action and any appeal of such action in its own name by any of its attorneys designated by it
> for such purpose.
> (2) Except as otherwise provided in paragraph (3), in any civil action—
>
> ...
>
> the Commission shall have exclusive authority to commence or defend, and supervise the
> litigation of, such action and any appeal of such action in its own name by any of its attorneys
> Continued

bringing any criminal cases arising from violations of the laws administered by the Commission:

> Whenever the Commission has reason to believe that any person, partnership, or corporation is liable for a criminal penalty under [sections 41 to 46 and 47 to 58 of this title], the Commission shall certify the facts to the Attorney General, whose duty it shall be to cause appropriate criminal proceedings to be brought.

15 U.S.C. § 56(b).[3]

Indeed, in enacting amendments to 15 U.S.C. § 56 and related provisions in 1973, Congress took special care not to create ambiguities in the statute that might lead to the Commission's assuming a criminal jurisdiction. When the bill came from the Conference Committee, it included one provision (15 U.S.C. § 45(m)) that the parliamentarian of the House interpreted as allowing criminal prosecutions by the Commission. *See* 119 Cong. Rec. 36,813 (1973) (remarks of Sen. Stevens). To clarify the provision, the Senate returned to the version that it had originally passed, which plainly "applie[d] only to civil actions." *Id.*[4]

Nevertheless, the Commission argues that it has authority to bring actions for criminal contempt. The Commission does not claim any express statutory basis for this supposed authority. Instead, it contends that "the authority of [its] attorneys to prosecute the criminal contempt (if appointed by the court to do so) is an inherent part of their authority to prosecute the underlying action from which the contempt arises." Pederson Letter at 1. The Commission also relies on the Supreme Court's opinion in *FTC v. Dean Foods Co.*, 384 U.S. 597 (1966). In that case, the Court held that the Commission, despite an absence of explicit statutory authority, could seek preliminary relief from the Court of Appeals pending the outcome of Commission proceedings in a merger case because "[s]uch ancillary powers have always been treated as essential to the

---

[2] (.. continued)

designated by it for such purpose, unless the Commission authorizes the Attorney General to do so The Commission shall inform the Attorney General of the exercise of such authority and such exercise shall not preclude the Attorney General from intervening on behalf of the United States in such action and any appeal of such action as may be otherwise provided by law

15 U.S.C. § 56(a)  15 U S C. § 56(a)(3), to which these sections refer, deals with representation in civil actions before the Supreme Court

[3] As explained below, the Commission asserts that its power to prosecute contempts is incidental to its statutory power under the sections of the United States Code referred to in 15 U.S.C. § 56(b)  Therefore, the Commission could not escape from the provision of 15 U.S C § 56(b) about certification to the Attorney General by arguing that liability for contempt is not "under [sections 41 to 46 and 47 to 58]" of title 15, as referred to in that provision.

[4] Although Congress substituted a new version of 15 U.S.C § 45(m) in 1975, the amended provision expressly applies only to civil actions and thus does not enlarge the scope of the section in that respect. *See* Pub. L No 93-637, tit. II, §§ 204(b), 205(a), 88 Stat. 2193, 2199, 2200-01 (1975).

effective discharge of the Commission's responsibilities." *Id.* at 607. Finally, the Commission contends that its authority may be justified by its consistent exercise of this authority in the past.

## II.

The Commission's arguments do not establish its statutory authority to bring actions for criminal contempt.

A. The Commission has no authority to prosecute a criminal contempt as "an inherent part of [its] authority to prosecute the underlying action from which the contempt arises." Pederson Letter at 1. An action for criminal contempt is separate from the underlying civil litigation. As the Supreme Court explained in *Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987), the "criminal contempt proceedings arising out of civil litigation 'are between the public and the defendant, and are not a part of the original cause.'" *Id.* at 804 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 445 (1911)); *see Bray v. United States*, 423 U.S 73, 75 (1975).[5] Because the underlying civil action that Congress authorized the Commission to pursue is distinct from the criminal contempt action, there is no reason to infer that Congress intended the Commission's litigation authority to reach criminal contempt cases.

This conclusion is no mere matter of form but follows from the essentially different interests at stake in the underlying civil litigation and the subsequent criminal prosecution. Civil actions for injunctions vindicate the goals of the Federal Trade Commission Act or the Clayton Act; Congress explicitly entrusted the Commission with the duty of seeking those goals through litigation. An action for criminal contempt, however, is aimed at "vindicating the authority of the court" and "preserv[ing] respect for the judicial system itself." *Vuitton*, 481 U.S. at 800.[6] Prosecution of the criminal contempt, therefore, serves purposes different from those Congress directed the Commission to pursue in civil litigation.[7]

---

[5] A prosecution for criminal contempt, for example, is not "affected by any settlement which the parties to the [underlying] equity cause made in their private litigation," but continues as a separate action. *Gompers v Bucks Stove & Range Co*, 221 U.S at 451

[6] The Supreme Court accordingly held in *Vuitton* that attorneys "appointed to prosecute a criminal contempt action represent the United States, not the party that is the beneficiary of the court order allegedly violated." 481 U.S. at 804, *see United States v. Providence Journal Co* , 485 U S. 693, 700 (1988) ("The action was initiated in vindication of the 'judicial Power *of the United States*,' U S. Const , Art. III, § 1 (emphasis added), and it is that interest, unique to the sovereign, that continues now to be litigated in this Court.").

[7] To be sure, a prosecution for criminal contempt, in some measure, will indirectly promote the statutory policies at stake in the underlying litigation. Future violations of orders requiring obedience to the statute administered by the Commission may be deterred by the prospect of punishment for contempt. But this indirect promotion of the statutory policies does not detract from the primary purpose of vindicating judicial authority in criminal contempt cases. It is the vindication of judicial authority (and not the Commission's authority) that justifies appointment of a prosecutor by the court in the first place. *See Vuitton*, 481 U.S. at 800-01, *Cheff v Schnackenberg*, 384 U S. 373, 378 (1966) (plurality opinion) ("Cheff was found in contempt of the Court of Appeals, not of the Commission.").

The Commission's argument, moreover, could lead to a widening circle of "incidental" criminal prosecutions by the Commission. Charges of perjury, bribery, or obstruction of justice, too, could grow out of civil proceedings brought by the Commission. To our knowledge, however, the Commission has never asserted authority to prosecute such crimes, and exercise of such authority would be clearly contrary to the requirement of the FTC Act that criminal charges be referred to the Attorney General.

Actions for criminal contempt, therefore, are separate from the underlying civil actions in which the orders alleged to be violated are issued. The Commission's authority to litigate the civil actions does not entail any "inherent" authority to bring actions for criminal contempt.

B. The Supreme Court's decision in *FTC v. Dean Foods Co.*, 384 U.S. 597 (1966), does not support the authority claimed by the Commission to initiate actions for criminal contempt. *Dean Foods* merely held that the Commission could ask the court of appeals for a preliminary injunction against a merger, pending the outcome of administrative proceedings. Although the Commission had no explicit statutory power to seek this preliminary relief, the Court ruled that such power could be inferred:

> [T]he Commission is a governmental agency to which Congress has entrusted, *inter alia*, the enforcement of the Clayton Act, granting it the power to order divestiture in appropriate cases. At the same time, Congress has given the courts of appeals jurisdiction to review final Commission action. It would stultify congressional purpose to say that the Commission did not have the incidental power to ask the courts of appeals to exercise their authority derived from the All Writs Act.

*Id.* at 606 (footnote omitted). This rationale does not justify the Commission's prosecution of actions for criminal contempt. An action for criminal contempt does not vindicate the laws whose enforcement "Congress has entrusted" to the Commission; it vindicates the authority of the court, in a proceeding separate from the underlying civil action. Moreover, without authority to seek a preliminary injunction, the Commission would be powerless to prevent illegal mergers. Thus, injunctive authority is necessary to accomplish the mission Congress has set for the FTC. On the other hand even without criminal contempt authority, the FTC can fully vindicate its decrees through its civil authority. Accordingly, the authority to prosecute criminal contempts cannot be fairly inferred from the FTC's general statutory authority.

Nor do we believe that the *Dean Foods* Court's observation, in dictum, that it had never been "asserted that the Commission could not bring contempt actions in the appropriate court of appeals when the court's enforcement orders were violated, though it has no statutory authority in

295

this respect," 384 U.S. at 607, suggests that the Commission enjoys the power to bring criminal contempt cases. The Court followed this observation by declaring that "[s]uch ancillary powers have always been treated as essential to the effective discharge of the Commission's responsibilities." *Id.* Thus, this dictum can most sensibly be read as referring to civil contempt, since the other instances of the Commission's implied powers discussed by the Court — the power to seek preliminary relief from an appellate court and the power to defend Commission orders in judicial review proceedings — concern civil actions in which the Commission's authority and the policies of the statutes administered by the Commission would be vindicated. *See id.* at 606-07. Criminal contempt cases, as explained above, vindicate instead the authority of the court, in proceedings separate from the underlying civil actions.

Furthermore, the Eighth Circuit has reached the conclusion that *Dean Foods* "did not directly or indirectly concern itself with the possible conflict between the Commission and the Attorney General over which agency was the proper one to seek the exercise" of the appellate court's power to issue a preliminary injunction. *FTC v. Guignon*, 390 F.2d 323, 327 (8th Cir. 1968). The issue in *Guignon* was whether the Commission, on its own behalf, could seek to enforce discovery subpoenas or needed the "aid or consent" of the Attorney General. *Id.* at 324. The court decided that the Commission could not seek, on its own behalf, to enforce its discovery subpoenas but depended on the Attorney General to do so. Whether or not the court in *Guignon* was correct in making this ruling,[8] or in interpreting *Dean Foods* as not involving possible conflicts between the Commission and the Attorney General, *Guignon* demonstrates that *Dean Foods* should not be read as a general warrant for the Commission to assert implied powers that conflict with the Attorney General's statutory authority.

C. The Commission also argues that its authority to prosecute criminal contempts "is supported both by long and consistent usage and by the only decision of which [the Commission is] aware in which the issue [of agency authority] was expressly contested and resolved." Pederson Letter at 1. As an initial matter, we do not believe that usage alone can justify a practice unsupported in law — nor can a single district court decision. In any event, we do not believe that the usage or the case provides support for the Commission's claim of authority to bring criminal contempt actions.

As to the usage, the Commission cites seven reported cases in which it

---

[8] Two district court cases decided at approximately the same time as *Guignon* held that the Commission could seek to enforce its subpoenas without the consent and assistance of the Attorney General *FTC v. Kujawski*, 298 F. Supp. 1288, 1289 (N D. Ga. 1969); *FTC v. Continental Can Co* , 267 F. Supp. 713 (S.D.N.Y. 1967) Through later legislation, Congress made clear the Commission's statutory authority to bring actions to enforce subpoenas. *See* 15 U S.C § 56(a)(2)(D), Pub L. No. 93-153, tit. IV, § 408(g), 87 Stat 576, 592 (1973); Pub. L. No. 93-637, tit. II, § 204(a), 88 Stat. 2183, 2199 (1975).

prosecuted criminal contempts.[9] As the Commission concedes, Pederson Letter at 2-3, the courts in these cases did not address the Commission's authority to bring the actions. Nor did the Ninth Circuit consider the issue of statutory authority in a more recent case in which it sustained a finding of contempt and rejected the argument that, under *Vuitton*, the Commission was disqualified from prosecuting the contempt because it was an interested party.[10] *See FTC v. American Nat'l Cellular*, 868 F.2d 315 (9th Cir. 1989). Because these cases do not discuss the issue of statutory authority, they do not illuminate whether Congress intended the Commission to prosecute criminal contempts. *See United States v. Morton Salt Co.*, 338 U.S. 632, 647 (1950) (Nonexistent powers cannot "be prescripted by an unchallenged exercise.").

Nor has the usage in this area been consistent. In one instance of which we have been made aware, the Commission's lawyers received appointments as Special Assistant United States Attorneys, when a grand jury was conducting an investigation bearing on possible charges of criminal contempt. *See* Memorandum for D. Lowell Jensen, Deputy Attorney General, from Richard K. Willard, Acting Assistant Attorney General, Civil Division, at 1-2 (July 30, 1985); Memorandum for Richard K. Willard, Acting Assistant Attorney General, Civil Division, from John R. Fleder, Assistant Director, Office of Consumer Litigation (May 30, 1985); Pederson Letter at 3 n.3, 6; 28 U.S.C. § 515. The Commission suggests that this involvement by the Department of Justice does not destroy the consistency of the Commission's practice of representing itself because the Commission's attorneys "might properly prosecute the particular matter themselves." Pederson Letter at 3 n.3. That argument, however, is circular; it assumes that the Commission's lawyers could have brought an action. Absent the assumption that the Commission may prosecute a criminal contempt action, the involvement of the Department of Justice undermines the consistency of the very usage on which the Commission relies.

The Commission also argues that one case, *SEC v. Murphy*, Fed. Sec. L. Rep. (CCH) ¶ 99,688 (C.D. Cal. 1983), explicitly considered and upheld the authority of the Securities and Exchange Commission to bring criminal contempt actions under a statute similar to 15 U.S.C. § 56. The Court in *Murphy* did not discuss the different interests to be vindicated in criminal contempt action and the underlying civil case. Instead, the court based its holding on the absence of an explicit statutory prohibition against the

---

[9] *FTC v. Hoboken White Lead & Color Works*, 67 F.2d 551 (2d Cir. 1933); *FTC v. Pacific States Paper Trade Ass'n*, 88 F.2d 1009 (9th Cir. 1937), *In re Dolcin Corp.*, 247 F.2d 524 (D C. Cir. 1956), *cert denied*, 353 U.S. 988 (1957), *In re P. Lorillard Co*, 1959 Trade Cas (CCH) ¶ 69,272 (4th Cir 1959); *In re Floersheim*, 316 F.2d 423 (9th Cir. 1963), *In re Holland Furnace Co.*, 341 F.2d 548 (7th Cir. 1965), *aff'd sub nom Cheff v Schnackenberg*, 384 U S. 373 (1966); *In re Whitney & Co.*, 273 F.2d 211 (9th Cir 1959).

[10] *Vuitton* held, under the Court's supervisory power, that counsel for an interested party in civil litigation underlying a contempt action should not be appointed to prosecute the contempt. *See* 481 U.S. at 802-09.

SEC's bringing the action and on the argument that "the SEC — not the United States Attorney, the Attorney General, or anyone else — is in the best position to know the specific prohibitions of the injunction and the particular circumstances which allegedly constitute the contempt of the injunction." *Id.* at 97,765. In *Vuitton*, however, the Court rejected the argument that an attorney's expertise justifies giving him control of a prosecution for criminal appointment. The Court held that, despite expert knowledge, counsel for an interested private party should not be allowed to prosecute a criminal contempt: "That familiarity may be put to use in *assisting* a disinterested prosecutor in pursuant to the contempt action, but cannot justify permitting counsel for the private party to be in control of the prosecution." *Vuitton,* 481 U.S. at 806 n.17. Similarly, the Commission's knowledge of the underlying action cannot justify abandoning the principle that the Attorney General is to control the litigation of criminal cases on behalf of the United States. *See United States v. Nixon,* 418 U.S. at 694; 28 U.S.C. § 516. The single district court case addressing this issue — decided before *Vuitton* — is, therefore, unpersuasive.

In sum, the cases and practices on which the Commission relies do not establish that the Commission has implied authority to bring actions for criminal contempt. The cases involving the Commission itself do not touch on the issue at all; the usage in this area is not consistent; and the single district court case that might lead to an argument by analogy has been undercut by the later opinion of the Supreme Court in *Vuitton.*

## III.

Finally, we address two arguments not advanced in the Pederson Letter. First, although the Pederson Letter cites Fed. R. Crim. P. criminal contempt actions, the Commission does not rely on Rule 42(b) as "authoriz[ing] by law" the Commission's initiation of actions for criminal contempt. Since the Pederson Letter, *Vuitton* has established that Rule 42(b) "does not provide authorization for the appointment of a private attorney" but "speaks only to the procedure for providing notice of criminal contempt." *Vuitton,* 481 U.S. at 793, 794 (emphasis omitted). Rule 42(b) thus offers no authority for the Commission to prosecute contempts.

Second, it might be argued that even if the Commission lacks statutory authority to bring actions for criminal contempt, a court, through the exercise of its authority to appoint prosecutors, could empower the Commission to prosecute a criminal contempt case. Any such argument would be groundless. In addition to the issue of the court's authority to appoint prosecutors, there is a separate question about whether the government attorneys have authority to accept appointment. The Commission is a creation of statute and thus must abide by the statutory limitations on the authority. *See Civil Aeronautics Bd. v. Delta Air Lines,* 367 U.S. 316, 322 (1961); *Oceanair of Florida v. United States Dep't of*

*Transp.*, 876 F.2d 1560, 1565 (11th Cir. 1989). Prosecution of criminal contempts by Commission attorneys at the behest of a court would circumvent the Congressional determination to limit the Commission's authority to civil actions.[11]

## IV.

We conclude that the Commission has no authority to bring actions for criminal contempt. Commission lawyers, however, may be appointed special attorneys subject to the Attorney General's direction, 28 U.S.C. § 515, and in that capacity could conduct prosecutions for criminal contempt in cases where the court had appointed the United States Attorney to prosecute.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

---

[11] We do not believe that the judiciary would have the constitutional authority to assign governmental attorneys to prosecute criminal contempts in contravention of limits on their statutory authority *Vuitton* sustained the appointment of private attorneys to prosecute criminal contempts, because a court's power to "punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches " *Vuitton*, 481 U S at 796 Although the power of courts to vindicate their own authority, under the circumstances in *Vuitton*, arguably may be grounded in the Constitution, appointment of Commission attorneys hardly promotes judicial freedom from "complete dependence on other Branches."